

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

**David E. Moore**
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Firm Fax

July 11, 2023

**VIA ELECTRONIC FILING**

**PUBLIC VERSION**
**Dated:  July 18, 2023**

The Honorable Sherry R. Fallon
The U.S. District Court for the District of Delaware
844 N. King Street
Unit 14, Room 6100
Wilmington, DE 19801-3555

Re:     *Bard Peripheral Vascular, Inc. v. AngioDynamics, Inc.*
         C.A. No. 20-1544-CFC-SRF

**LETTER TO THE HONORABLE SHERRY R. FALLON**
**FROM DAVID E. MOORE**

OF COUNSEL:

John T. Moehringer
Danielle V. Tully
Michael B. Powell
CADWALADER, WICKERSHAM
& TAFT LLP
200 Liberty Street
New York, NY 10281
Tel: (212) 504-6000

Dated: July 11, 2023
Public Version Dated: July 18, 2023

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

Dear Judge Fallon:

Bard's motion to compel should be denied. *First*, Angio has already produced over a decade of detailed financial information in the exact manner and in the exact format *requested by Bard.* Bard's request for even more information is not proportional to the needs of the case and would create an extreme and unjustified burden. *Second*, Bard's motion to compel on Interrogatories 3 and 5 is moot because Angio recently supplemented its responses. The parties *have not met-and-conferred* on the new complaints Bard raises, nor is the new relief Bard seeks appropriate for a motion to compel. *Third*, SmartPort+ is not an accused product, Bard has not sought leave to add it to the case, and there is insufficient time in the schedule to add it now. Indeed, the deadline for completing document production occurred on June 2, 2023, fact discovery closes on July 21, 2023,[1] and Bard has not been diligent on this issue.

### *AngioDynamics's Production of Transaction and/or SKU-Level Data*

The Accused Products in this case are identical to those in the -218 litigation. (Ex. A.) For that reason, Angio has already produced detailed financial information to Bard for each Accused Product for entire time period relevant to damages here. Moreover, Angio produced this information in the very format Bard requested: over the course of multiple meet-and-confers that happened in 2016 and 2017, Bard and Angio negotiated the exact contours of Angio's financial production. This resulted in the production from Angio of an immense amount of financial information reflecting nearly a decade and a half of the company's sales data and revenue information—a herculean effort that was both burdensome and very expensive.

But Bard is now back for more. It seeks to retread old ground by requesting transaction and/or SKU-level information about the same information Angio already produced.[2] Put differently, Bard seeks to renege on the parties' prior agreement despite representing to Judge Connolly that discovery in this case was essentially complete given its overlap with the -218 litigation. Indeed, when advocating for an extremely aggressive trial date and truncated discovery period, Bard told Judge Connolly that little additional discovery was needed because the parties would merely need to build on the discovery already taken in the -218 litigation and, by virtue of the parties' cross-use agreement and cross-productions, the bulk of the parties' discovery had already been produced or "deemed produced" in this case. By Bard's own telling, the parties needed only to do minor clean-up discovery about the negligible differences between the cases. For this reason alone, Bard's request for additional discovery beyond the scope of the parties' agreement is not proportional to the needs of the case, nor is it consistent with the aggressive schedule entered at Bard's urging.

While Bard admits that Angio's production has been extensive, including "spreadsheets showing the units sold and revenue by product line on a quarterly basis," it now argues that this level of data is insufficient to support Bard's lost profits theory. But lost profits was at issue in the -218 litigation; indeed, Bard raised no complaints with Angio's financial production there, nor did Bard complain that the production failed to provide sufficient detail for lost profits.[3]

---

[1] The parties entered a stipulation to take depositions until August 4, (D.I. 338), which the Court entered in a text order on July 6, 2023. No other discovery deadlines were impacted.

[2] Angio offered to produce SKU-level data going back three years, a much less burdensome exercise reflecting what Angio maintains in the ordinary course. Bard refused.

[3] That Bard dropped its claim for lost profits at the expert phase does not change the analysis because Bard never complained that the financial data it had from Angio was in any way deficient. Its strategic decision to narrow its case should not be seen as a deficiency with Angio's production. Nor is the fact that Bard has since obtained new counsel of any moment.

███████████████████████████████ Bard also complains that the data Angio produced does not allow Bard to determine "how many of each SKU Angio sold" or "which customers purchased these products." But this Court has held that sales data of the type Angio produced is more than sufficient to support a lost profits theory.[4] *See Syngenta Crop Prot., LLC v. Willowood, LLC*, 2016 WL 4925099 at *4 (D. Del. Sept. 14, 2016) (holding that information such as the identity of the purchasers or categories of the customers are not relevant to a lost profits claim, and that "annual sales figures" for "substantially similar" products were sufficient). While Bard repeatedly demands transaction-level sales data, it has never provided an explanation as to ***why*** it needs this data to support its lost profits theory or why Angio's production is insufficient. By contrast, Angio has repeatedly explained to Bard that its request is unduly burdensome and unnecessary to lost profits.[5] Bard's attempt to use lost profits to justify its request should be rejected.

By contrast, Angio has repeatedly explained to Bard that its request is unduly burdensome and unnecessary to lost profits.[6] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Ex. J.) It would also be pointless: Bard ***already*** has Angio's financial information for the entire damages period—including 2023 data—and this data has been produced in the exact format ***Bard itself*** requested.

Bard baselessly claims that ████████████████████████████████████████████████████████████████████████████████████████████████████████. *See AgroFresh Inc. v. Essentiv LLC*, 2018 WL 9578196 at *2 (D. Del. Dec. 11, 2018) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ***and*** proportional to the needs of the case[.]" (emphasis added)). Doing so by the end of fact discovery, July 21, is impossible. Angio made these points repeatedly during the meet-and-confers.

Bard's motion to compel should thus be denied. Bard requested an expedited discovery schedule in this action based on its claim that discovery was essentially complete. That representation is inconsistent with its attempt to expand damages discovery, to renege on the parties' prior agreement about the scope and content of Angio's financial production, and to seek information that is disproportional to the needs of the case and unnecessary to lost profits.

***AngioDynamics's Supplemental Responses to Interrogatories 3 and 5***

Bard's motion on Interrogatories 3 and 5 is moot. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Bard now changes tack to raise new issues about Angio's supplemental responses that the

---

[4] Angio does not concede that Bard is entitled to lost profits.

[5] In *Godo Kaisha Ip Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 2018 WL 11426940 at *3 (D. Del. Jan. 3, 2018), Your Honor compelled the supplementation of financial data where there were issues of serious inconsistency between productions. No such issue exists here.

[6] *Godo Kaisha Ip Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 2018 WL 11426940 at *3 (D. Del. Jan. 3, 2018) "is limited to the specific facts of [that] case, and is not intended to create an overarching rule that attorney-generated spreadsheets of financial data are inadequate[.]" In *Godo Kaisha* parties were compelled to supplement financial data where there were issues of serious inconsistency between productions. No such issue exists here.

parties have not discussed. That is litigation by ambush, not a good faith application of the dispute resolution process. Angio has not had the opportunity to fully evaluate these new issues, let alone meet-and-confer with Bard on them. Worse, Bard's new request appears to be that this Court enter summary judgment on Bard's contention about the date of knowledge and compel Angio to conform its responses accordingly. Suffice it to say, Angio factually disputes Bard's assertion about the date of knowledge, and a motion to compel is an inappropriate vehicle for the relief Bard appears to seek.

### *AngioDynamics's Production of SmartPort+ Documents*

Bard failed to identify the SmartPort+ as an Accused Product in its Initial Infringement Contentions. Now, instead of using proper procedure (*e.g.*, by moving to amend the Complaint), Bard tries to add the product to the case at the eleventh hour using backdoor methods. Bard's argument is also inconsistent. Bard begins by arguing that the SmartPort+ is an Accused Product covered by its Initial Contentions (a position that is itself belied by Bard's Final Infringement Contentions, *see infra*). But just one paragraph later, Bard argues that the SmartPort+ does not need to be formally accused in order to seek discovery on it. Whatever Bard's positions, it is improper to add the product now and unsupported to argue that it has been in the case *ab initio*. Bard's attempt to argue both sides of the issue highlights how it has no basis to seek discovery on SmartPort+.

As for timing, Angio informed Bard on May 3—two days after Bard first served written discovery on the product—that it would not be providing discovery into SmartPort+. But instead of immediately seeking relief, Bard delayed such that the resolution of its motion to compel will occur less than *ten* days from the end of fact discovery on July 21. Bard's delay and lack of diligence provide another basis to deny its motion.

**The Undisputed Facts.** SmartPort+ launched in July 2020. (Ex. C)  SmartPort+ is not specifically identified in Bard's Initial Infringement Contentions, which were served in April 2021—nearly a year after the product launched. By contrast, Bard's initial infringement contentions in C.A. No. 21-349-CFC ("Bard III") were served on May 1, 2023 and specifically identify SmartPort+ as an accused product. (Ex. D.) Bard thus knew it had to include SmartPort+ in its infringement contentions, had enough information to do so no later than that date, and thus has no excuse for failing to move to add SmartPort+ to this case at that time.

Indeed, Bard first referenced SmartPort+ in this case in requests for production served on May 1, 2023. (Ex. F.) Two days later, counsel for Angio immediately sent an email putting Bard on notice that SmartPort+ was not an Accused Product. (See Ex. G.) Counsel for Bard responded less than 24 hours later, indicating that Bard intended to move to compel if Angio did not change its position. But none came: Bard sat on this issue for over a month.

On July 7, 2023, Bard served its Final Infringement Contentions, identifying SmartPort+ for the first time and providing its first ever disclosure in this case about how SmartPort+ allegedly infringes each element of the asserted claims. (Ex. I.) At no point has Bard sought to move to amend the Complaint or its infringement contentions to add SmartPort+. Angio thus intends to strike at least this portion of Bard's Final Infringement Contentions.

This is not the first time Bard has belatedly sought to add SmartPort+ to an existing case. In the summer of 2021, Bard attempted to add SmartPort+ to the -218 litigation without filing a motion to amend. (Ex. E.) Bard made the similar arguments to those it makes here—*e.g.*, that SmartPort+ was already included by implication. But Judge Bataillon rejected those arguments, including Bard's unsupported assertion that the SmartPort+ product is basically the same as the SmartPort line.  (*See* -218 litigation, D.I. 532.) And ultimately, when confronted with Angio's position that SmartPort+ was never an accused product, Bard noted that it would be willing to "pursue [its] infringement claims in a *separate lawsuit*," with no reference to this litigation which was well underway. (Ex. E.)

**SmartPort+ is Not an Accused Product.** Judge Connolly's form scheduling order requires the identification of accused products be "as specific as possible" and that "[e]ach product, device,

and apparatus shall be identified by name or model number, if known." But in its April 2021 Initial Infringement Contentions, Bard did not specifically name SmartPort+ as an Accused Product, even though it specifically named other ports with the "SmartPort" name—the CT, MP, and LP.  The contentions make *no mention* of SmartPort+ even though it had been on sale for nearly a year.

As a direct competitor of Angio—Bard's long-time litigation target—Bard cannot reasonably argue that it did not know of SmartPort+ in April 2021. As for Bard's argument that it would have needed discovery into the product before it could include it in its infringement charts, this contention is belied by the fact that it ***identified*** and ***charted*** SmartPort+ in Bard III. Bard appears to recognize its error. In its Final Infringement Contentions, served just last week, Bard amended the Accused Instrumentalities, now referring to the "Smart Port family (including . . . SmartPort+ (both titanium and plastic port bodies))." (Ex. I, Bard Final Infringement Contentions.) Bard's belated attempt to include the SmartPort+ as an accused product here, by reframing its accused products as the "Smart Port ® family", is an admission that its Initial Infringement Contentions did not cover SmartPort+. Surely, if Bard thought that SmartPort+ was covered by the earlier filing, it would have no need to change the definition of Accused Instrumentalities so late in this case.

Nor has Bard at any point attempted to meet its burden in proving that the SmartPort products it does identify are representative of the SmartPort+. *See L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1317–18 (Fed. Cir. 2006). (holding that a patentee cannot "assume" representativeness and cannot "shift to [the defendant] the burden to show that is not the case" because doing so would "ignore[] the [patentee's] burden of proof on infringement."). [REDACTED]

A recent case, *Barry v. Stryker*, is instructive. There, plaintiff, Dr. Barry, brought a patent infringement suit against defendant SeaSpine, alleging infringement of Barry's patents. *Barry v. Stryker Corp.*, No. CV 20-1787-RGA-SRF, 2023 WL 2733652, at *1–3 (D. Del. Mar. 20, 2023) (Fallon, J.), *R&R adopted*, No. CV 20-1787-RGA, 2023 WL 23224498 (D. Del. May 3, 2023).  In that case, SeaSpine objected to Barry's discovery into products not accused of infringement as being "inconsistent with the allegations in the complaint." *Id.* at *3–4. The Court denied Barry's motion to compel, stating "[i]t's the Plaintiff's job to name accused products and get discovery on accused products. If it's not an accused product, I'm not going to be ordering discovery on it." *Id.* at *4, 6 (quoting telephonic hearing transcript).  The Court denied Barry's motion to amend the Complaint for lack of diligence, noting that "it is undisputed that Plaintiff could have accused the implant systems it now seeks to add from the start of the litigation." *Id.* at *7. The same reasoning applies here: Bard could have accused the product in its April 2021 infringement contentions. Bard could also have moved to amend to add SmartPort+ to this case. Bard did neither.

**Bard's Delay Prejudices Angio**. Angio identified this issue for Bard two days after receiving Bard's requests for discovery about SmartPort+. What did Bard do? Nothing—for over a month—such that its motion to compel will be resolved at the very end of fact discovery. That is the opposite of diligent. *Cf. Barry*, 2023 WL2733652, at *6. Moreover, the discovery Bard seeks on SmartPort+ simply cannot be provided by July 21—to say nothing of the fact that the document production deadline expired on June 2.[7]

The Court should reject Bard's attempt to add in a new product without proper procedure Nor  is there room in the schedule to add the product at this point. Bard's motion should be denied.

---

[7] Bard refused to consider schedule modifications to account for its late attempt to add SmartPort+.

-4-

                Respectfully,

                */s/ David E. Moore*

                David E. Moore

Enclosures

cc: Counsel of Record (via electronic mail)