# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

Brian P. Egan
(302) 351-9454
(302) 498-6216 FAX
began@mnat.com

Originally Filed:  July 10, 2023
Redacted Version Filed:  July 19, 2023

The Honorable Sherry R. Fallon
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

*VIA ELECTRONIC FILING*

REDACTED - PUBLIC VERSION

Re:  *C.R. Bard, Inc. et al v. AngioDynamics, Inc.*, C.A. No. 20-1544 (CFC)(SRF)

Dear Judge Fallon:

Bard alleges in this action, filed in 2012 and transferred to this Court in 2020, that Angio's power injectable access ports infringe three Bard patents.  Chief Judge Connolly held a scheduling conference on March 23, 2023 and ordered completion of fact discovery within approximately four months so that this case can be tried in April 2024.  D.I. 273.  Despite this clear direction from the Court, Angio's strategy has been to delay and to refuse outright to produce discovery that is both relevant and proportional.  Bard wishes to raise three issues:  1) Angio's refusal to provide transactional and/or SKU level sales data; 2) Angio's untimely and deficient interrogatory responses regarding its first awareness of the Asserted Patents and their underlying patent publications; and 3) Angio's refusal to produce documents, including engineering drawings, the design history file and sales information for its accused SmartPort+ product.

      **Angio should be ordered to provide transaction and/or SKU level sales data.**  Bard and Angio are the two largest manufacturers of ports and both companies sell a diverse set of ports with different features, e.g. ports made of different materials, different sizes and different catheters types.  Bard seeks, *inter alia*, lost profits for Angio's infringing power injectable port sales.  To establish lost profits, Bard must show that it would have made Angio's sales but for Angio's infringement.  *E.g., Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).  Because of the diverse set of products offered by both parties that compete head-to-head, Bard served Joint Interrogatory No. 4, which requires Angio to "[i]dentify every sale of each of Your Accused Products on a transaction by transaction basis from launch until present, including … the number of units of each SKU sold, the price per unit, the total sale amount, and the date of sale."

The Honorable Sherry R. Fallon
July 10, 2023
Page 2

Angio has not provided any substantive response.  Exs. 1, 16.  Nor has Angio produced customer level sales data in response to Bard's requests for production.[1]

Instead, Angio has produced spreadsheets showing the units sold and revenue by product line on a quarterly basis; however, this information is not sufficient because its aggregates many products into a single line item.  For example, Angio ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Bard cannot determine, from the data produced, how many of each SKU Angio sold.  Bard also cannot determine the price per SKU.  Nor can Bard ascertain which customers purchased these products.

Angio refuses to produce customer level sales data because it is supposedly "disproportionate to the needs of the case."  Notably, Angio does not argue that Bard's request for transaction level sales data is irrelevant.  Nor could it.  Indeed, in its Rule 30(b)(6) notice to Bard, Angio seeks testimony regarding the "revenue from each sale" Bard would have made "but for AngioDynamics's alleged infringement."

Angio argues that producing this data is unduly burdensome, but without any support. Angio represents ████████████████████████████████████████████[2] Ex. 15.  But Angio refuses to do so.  Angio contends ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Bard served a deposition notice on Angio's VP of IT Enterprise Systems to confirm the unarchiving process, but Angio refused the June 27 date in the notice and has yet to provide an alternative.

Angio also "objects to this information as seeking the production of sales information in a manner inconsistent with the agreed procedures of the [prior] case" (C.A. 15-218-JFB-SRF).  Ex. 16.  That is not a valid objection. The prior case involved different patents, covered a different damages period, and did not involve lost profits.  Angio should be ordered to produce this information.

**Angio should be ordered to supplement its interrogatories regarding its knowledge of the patents and publications.**  Angio's first  awareness of the Asserted Patents and/or the patent publications that preceded issuance of a patent is relevant to numerous issues, including, *inter alia*,

---

[1]  Sales data are also responsive to RFP No. 42 ("Documents sufficient to show, by quarter, the number of units of the Accused Products that were sold and the identity of each customer that made each purchase.") and No. 65 ("Documents sufficient to show Angio's sales for SmartPort+"), as well as RFPs Nos. 33, 37, and 70.  Exs. 2-3.

[2]  Of course, Angio was obligated to maintain such data since it was sued in 2012.

The Honorable Sherry R. Fallon
July 10, 2023
Page 3

willful infringement and provisional rights under 35 U.S.C. § 154(d).  Accordingly, Bard served
Interrogatories Nos. 3 and 5 in May 2021 asking for, *inter alia*, "a detailed explanation of when
and how You first became aware of each Bard Patent-in-Suit" and "when and how You first
became aware of each of the following published patent applications [corresponding to the
Asserted Patents], including the earliest date on which You learned of each and the individuals
involved," respectively.  Ex. 1.  For Interrogatory No. 5, Angio initially responded that ███████
███████████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████  Ex. 1 at 14.  Its
response to Interrogatory No. 3 was similar.

Bard wrote to Angio on May 4th stating that Angio's response to these interrogatories was
deficient and noting, *inter alia*, that ███████████████████████████████████████████████
███████████  Ex. 6.  Angio responded that ███████████████████████████████████████████
██████████████  (Ex. 7); however, Angio never explained ████████████████████████████
█.



In supplementing its interrogatory responses, the Court also should order Angio to
investigate any ***factual*** information reflected in any opinions of counsel.  Angio's director of
intellectual property testified that █████████████████████████████████████████████████
██████████████████████████████  Ex. 17 at 932:15-940:8, *see also* Ex. 18
Tr. at 124:22-125:3, 127:6-11, 136:11-19, 146:10-17.  Thus, it is likely that Angio has opinions of
counsel for the Asserted Patents.  Angio has decided not to waive privilege for these opinions.
Nevertheless, any ***factual*** information reflected in these opinions, such as the date that Angio was
aware of the patents or publications, is not privileged and cannot be shielded from discovery.  *See*

The Honorable Sherry R. Fallon
July 10, 2023
Page 4

*Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981); *Pfizer Inc. v. Ranbaxy Labs., Ltd.*, , 2004 WL 2323135, at *1 (D. Del. 2004) ("Documents sent or prepared by counsel containing [] factual information for the purpose of obtaining or giving legal advice are protected from disclosure, but to the extent purely factual information can be extracted, such information is discoverable."). Accordingly, the Court should order Angio to consider the ***factual*** information reflected in any opinions of counsel in its response to the factual information sought by Interrogatories Nos. 3 and 5, i.e. when Angio first became aware of the patents.

**Angio should be ordered to produce documents relating to its Smartport+ product.**
One of Angio's power injectable port lines is called "SmartPort." The SmartPort line includes a number of different sizes and varieties of ports and in 2020, Angio launched the "SmartPort+," which comprises the same ports as the existing SmartPort products but using a different catheter material. The SmartPort line has been accused since the outset of the case. Bard identified the SmartPort line in its 2012 complaint. D.I. 2 at ¶¶ 11, 15, 18. Similarly, on April 29, 2021 Bard served its Preliminary Infringement contentions identifying, ███████████████████████████ ████████████████████████████ as accused instrumentalities. Ex. 13 at 2-3. Bard clarified in its contentions that ████████████████████████ ████████████████████████████████████████ *Id.* at 2-3. Notably the claims are directed to ports, not catheters, so any differences in the catheter do not impact the infringement analysis, and the fact that Angio chose to differentiate one if its catheter options with a "+" symbol also does not affect the infringement analysis.

Angio plainly understood that the SmartPort+ was an accused product. The original Scheduling Order set a deadline for Angio produce, *inter alia*, "documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its" infringement contentions. D.I. 216. In making this core technical production, Angio produced ████████████████████████████████ ████████████████████████████████████████ *See Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2017 WL 658469, at *2 (D. Del. Feb. 14, 2017) ("Infringement contentions... serve the purpose of providing notice to the Defendants of infringement theories….").

However, when Bard served RFPs seeking additional technical documents for the Accused Products, including SmartPort+, Angio refused to produce them. Exs. 3, 14. Angio contends ████████████████████████ ██████████ and Angio demanded that Bard move to amend its contentions. Putting aside the fact that Bard has accused the SmartPort line of products of infringement since the outset of this case and that Angio clearly understood that the SmartPort+ is an accused product (as discussed above), this is not a valid basis for refusing discovery. Discovery is not limited only to the accused products and Bard is permitted to seek additional documents on Angio's port products regardless of whether SmartPort+ was explicitly identified in Bard's preliminary infringement contentions. Angio is simply trying to delay discovery by withholding discovery unless Bard makes an unnecessary motion to amend. Indeed, Angio recently produced additional SmartPort+ documents in C.A. 21-349, but has pointedly refused to produce the same documents in this case. The Court should reject this gamesmanship and order prompt production of the SmartPort+ documents.

The Honorable Sherry R. Fallon
July 10, 2023
Page 5


Respectfully,

*/s/ Brian P. Egan*

Brian P. Egan (#6227)


BPE:ds
Enclosures
cc:     Clerk of the Court (via hand delivery)
        All Counsel of Record (via e-mail)

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| C.R. BARD, INC. and<br>BARD PERIPHERAL VASCULAR, INC.,   ) | |
| ) | |
| Plaintiffs and   ) | |
| Counterclaim-Defendants,   ) | C.A. No. 20-1544 (CFC) |
| ) | |
| v.   ) | **DEMAND FOR JURY TRIAL** |
| ) | |
| ANGIODYNAMICS, INC.,   ) | |
| ) | |
| Defendant and   ) | |
| Counterclaim-Plaintiff.   ) | |

**ANGIODYNAMICS, INC.'S RESPONSES AND OBJECTIONS**
**TO BARD'S FIRST SET OF INTERROGATORIES (NOS. 1-6)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the agreed case schedule, Defendant and Counterclaim-Plaintiff AngioDynamics Inc. ("AngioDynamics") responds and objects to C. R. Bard Inc. and Bard Peripheral Vascular, Inc.'s ("Bard's") First Set of Interrogatories, served May 21, 2021. Preceding AngioDynamics's responses and specific objections below, AngioDynamics provides its General Objections applicable to each of its responses. Each of AngioDynamics's responses is subject to and without waiver of its general and specific objections below.

**A.     GENERAL OBJECTIONS**

1.     AngioDynamics objects to each and every Interrogatory to the extent it seeks information and/or imposes a duty on AngioDynamics that is not proportional to the needs of the instant litigation.

2.     AngioDynamics objects to each and every Interrogatory to the extent it seeks information unrelated to the Accused Products identified by Bard in its Initial Disclosures Under

Fed. R. Civ. P. 26(a)(1), its Infringement Contentions, and Delaware Default Standard for Discovery Paragraphs 3 and 4(a), served March 30, 2021.

3.      AngioDynamics responds to these Interrogatories based on the information currently available to it. Given that both discovery and AngioDynamics own investigation in this action are ongoing, AngioDynamics reserves the right at any time to supplement, correct, amend, or clarify any of the responses herein set forth.

4.      AngioDynamics objects to each and every definition, instruction, and/or Interrogatory to the extent that it purports to impose duties or obligations upon AngioDynamics in excess of or different from the duties and obligations imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of this Court, any applicable orders of this Court—including but not limited to the Court's Scheduling Order— any stipulation or agreement of the parties, or other applicable law.

5.      AngioDynamics objects to each and every definition, instruction, and/or Interrogatory as overly broad, not described with reasonable particularity, and unduly burdensome to the extent that it seeks, individually or collectively, information not proportional to the claims and defenses in the instant litigation.

6.      AngioDynamics objects to each and every definition, instruction, and/or Interrogatory to the extent that it purports to require the production or disclosure of any privileged communication or attorney work product or any other applicable privilege, protection or doctrine. If supplying any of the requested information would result in waiving any applicable privilege or objection based on any such privilege, AngioDynamics objects to providing such information. Nothing contained herein is intended to be or should be construed as a waiver of the attorney-client privilege, the attorney work-product doctrine, the common interest and/or joint

defense privilege, the rights set forth in Fed. R. Civ. 26(b)(5)(B), or any other applicable privilege, protection or doctrine.

7.      AngioDynamics objects to each Interrogatory to the extent that it attempts to elicit information containing the impressions, conclusions, opinions, legal research or theories of attorneys of AngioDynamics, or attempts to seek materials prepared in anticipation of litigation.

8.      AngioDynamics objects to each Interrogatory to the extent that it attempts to seek disclosure of information protected by the rights of privacy of AngioDynamics, AngioDynamics employees, or third party non-litigants.

9.      AngioDynamics objects to each Interrogatory to the extent that it seeks to elicit information that comprises third-party proprietary information, trade secrets or other confidential commercial information that AngioDynamics is obligated not to disclose. AngioDynamics will provide such information only after any necessary consent has been obtained from any such third party.

10.      AngioDynamics objects to each Interrogatory to the extent that it calls for information that is not within AngioDynamics's knowledge, or to the extent that it calls for information that is not within AngioDynamics's possession, custody, or control. AngioDynamics also objects to each Interrogatory to the extent that it seeks information already in Bard's possession, custody or control, or available to Bard from public sources.

11.      For all information provided, AngioDynamics reserves its right to interpose at trial all objections to competence, authenticity, relevance, materiality, propriety, admissibility and any and all other objections that would exclude the information from evidence.

12.     AngioDynamics objects to each Interrogatory to the extent that it seeks information that is properly the subject of expert testimony. To the extent that any Interrogatory conflicts with the Court's Scheduling Order, any other applicable statute, rule, or order, and/or any agreement between the parties, AngioDynamics will follow the dates established in the Court's Scheduling Order, such other applicable statute, rule, or order, and/or such agreement between the parties.

13.     AngioDynamics objects to each Interrogatory to the extent that it is vague, ambiguous, unduly broad in scope, uncertain as to time, unduly burdensome, or oppressive.

14.     AngioDynamics objects to each Interrogatory to the extent that it is compound, phrased disjunctively or conjunctively, and/or includes multiple subparts in such a manner that it is unduly burdensome, confusing, cannot be reasonably answered, or is in violation of Federal Rule of Civil Procedure 33(a).

15.     AngioDynamics objects to Bard's Definitions and Instructions to the extent that they seek information not currently in AngioDynamics's possession, custody or control, on the grounds that any such definition or instruction seeks to require more of AngioDynamics than its obligations under the applicable law, is overly broad, subjects AngioDynamics to unreasonable and undue annoyance, oppression, burden and/or expense or imposes upon AngioDynamics an obligation to investigate information or materials from third parties or services that are equally accessible to Bard.

16.     AngioDynamics objects to Bard's use of the terms "or," "and," "all," "any," "each," "every," "one or more," and "including" as being overly broad and unduly burdensome to the extent that they seek information cumulative of each other.

17.     AngioDynamics objects to each and every definition, instruction, and/or Interrogatory to the extent that it purports to require AngioDynamics to produce documents, things, or information on behalf of any other entity. AngioDynamics will only respond on behalf of AngioDynamics, Inc.

18.     AngioDynamics objects to Bard's vague use of the terms "describe," "discuss," "concern," and "concerning" because the definitions are overly broad, vague, ambiguous, harassing, and unduly burdensome, and cause the Interrogatories incorporating those terms to exceed the scope of AngioDynamics's duty to respond to these Interrogatories pursuant to the Federal Rules of Civil Procedure and the applicable rules and orders of this Court.

19.     AngioDynamics objects to the definition of "document" to the extent that the definition would require discovery beyond the scope of the requirements contained in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or the relevant statutory or case law. AngioDynamics also objects to Bard's definitions and instructions to the extent that they seek to impose obligations to search for, collect, produce, or analyze electronically stored information beyond that which is required by the Court's Scheduling Order and Delaware's Default Standard for Discovery.

20.     To the extent any opinions may exist, these opinions and any information or documents relating thereto, including information relating to individuals with knowledge of any opinion, are privileged and confidential and will not be produced or listed on a privilege log until such time as AngioDynamics elects to rely on any such opinions in accordance with the March 23, 2021 Scheduling Order.

## B.    OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1.**

Identify the operative 510(k) clearance, design drawings and manufacturing specifications for each of Your Accused Products.

**RESPONSE:**

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as vague and ambiguous to the extent it refers to the "operative" 510(k) clearance, design drawings and manufacturing specifications. Regulatory filings, drawings, and specifications may change over time, and it is unclear the time period for which Bard is requesting "operative" documents. AngioDynamics further objects to this Interrogatory as impermissibly containing multiple subparts. To the extent that the inclusion of these subparts as separate Interrogatories increases the total number of Interrogatories above the Court's prescribed limit, AngioDynamics objects to the Interrogatories as exceeding the permitted number. AngioDynamics further objects to this Interrogatory as overly broad and not proportional to the needs of the case to the extent it seeks information not relevant to any claim or defense in this case, including specific details relating to any regulatory clearance.

Subject to and without waiving the foregoing general and specific objections, AngioDynamics identifies the following based on its current investigation: DELANGIO_00002295-2498;   DELANGIO_00004812-846;   DELANGIO_00026565-6578; DELANGIO_00026777-780;    DELANGIO_00000855-1214;    DELANGIO_00000890-97; DELANGIO_00026394-537;   DELANGIO_00026019-203;   DELANGIO_00001979-2014; DELANGIO_00000148-271;     DELANGIO_00000158;     DELANGIO_00000272-422; DELANGIO_00026538-6776;   DELANGIO_00001215-1375;   DELANGIO_00026538-6776; DELANGIO_00000599-854;    DELANGIO_00000832-34;    DELANGIO_00001474-1514;

DELANGIO_00026204-6379;      DELANGIO_00026781-917;      DELANGIO_00026918-24;

DELANGIO_00026781-917;      DELANGIO_00012269-283;      DELANGIO_00073308-390;

DELANGIO_00073138-183;      DELANGIO_00072873-930;      DELANGIO_00092871-940;

DELANGIO_00073308-390;      DELANGIO_00072873-930;      DELANGIO_00073138-183;

DELANGIO_00073308-390;      DELANGIO_00092871-940;      DELANGIO_000186851;

DELANGIO_00264239242;      DELANGIO_00011197-298;      DELANGIO_00091889-919;

DELANGIO_00111191-256; DELANGIO_00208777-821 at 780; DELANGIO_00452360-388;

DELANGIO_00011197-298;      DELANGIO_00200714-952;      DELANGIO_00200030-420;

DELANGIO_00068955.

Discovery has just begun, and AngioDynamics reserves the right to update its interrogatory response when and if appropriate as discovery progresses.

## INTERROGATORY NO. 2.

To the extent You contend that any of Your Accused Products do not infringe the Asserted Claims, state the basis for Your contention, including identifying each claim element that is allegedly not infringed and the reason You contend that element is not infringed.

## RESPONSE:

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as calling for information subject to the attorney-client privilege and/or work-product privilege.   AngioDynamics further objects to this Interrogatory to the extent it calls for information that is properly the subject of expert reports; such information shall be disclosed as required by the Federal Rules of Civil Procedure and the Court's Scheduling Order.  AngioDynamics further objects to this Interrogatory to the extent it seeks to shift the burden of proof as to infringement to AngioDynamics instead of to Bard.

-7-

AngioDynamics further objects to this Interrogatory as impermissibly containing multiple subparts. To the extent that inclusion of these subparts as separate Interrogatories increases the total number of Interrogatories above the Court's prescribed limit, AngioDynamics objects to the Interrogatories as exceeding the permitted number. AngioDynamics notes that discovery remains ongoing, and that the Court has not issued any decision construing the meanings of claim terms. AngioDynamics reserves the right to amend its response as necessary and appropriate.

AngioDynamics further objects to this Interrogatory as impermissibly vague and unduly burdensome because Bard has failed to sufficiently place AngioDynamics on notice as to Bard's theories of infringement, including because Bard's infringement contentions are impermissibly vague and ambiguous, and fail to adequately identify the specific features and characteristics of the accused products that are allegedly infringing.  Moreover, Bard's Infringement Contentions merely parrot claim language or the elements of a theory of infringement without providing actual detail as to how such claim language or elements are actually satisfied by the accused products.  AngioDynamics' response is therefore limited to its present understanding of the specific theories identified in Bard's Infringement Contentions.

Subject to and without waiving the foregoing general and specific objections, AngioDynamics responds as follows: ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████





AngioDynamics' investigation is ongoing, and discovery has not yet begun in earnest. AngioDynamics will continue to update this Interrogatory response as required by the Federal Rules of Civil Procedure as its investigation continues.

**<u>INTERROGATORY NO. 3.</u>**

For each of Your Accused Products, separately state the basis for any contention that any infringement has not been willful, including in Your answer a detailed explanation of when and

how You first became aware of each Bard Patent-in-Suit and why You did not/do not have the requisite intent to willfully infringe.

**RESPONSE:**

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as calling for information subject to the attorney-client privilege and/or work-product privilege. AngioDynamics further objects to this Interrogatory to the extent it calls for information that is properly the subject of expert reports; such information shall be disclosed as required by the Federal Rules of Civil Procedure and the Court's Scheduling Order. AngioDynamics further objects to this Interrogatory to the extent it seeks to shift the burden of proof as to infringement to AngioDynamics instead of to Bard. AngioDynamics further objects to this Interrogatory as impermissibly containing multiple subparts. To the extent that the inclusion of these subparts as separate Interrogatories increases the total number of Interrogatories above the Court's prescribed limit, AngioDynamics objects to the Interrogatories as exceeding the permitted number. AngioDynamics notes that discovery remains ongoing, and that the Court has not issued any decision construing the meanings of claim terms. AngioDynamics reserves the right to amend its response as necessary and appropriate.

AngioDynamics further objects to this Interrogatory to the extent it is cumulative of other discovery requests. AngioDynamics further objects to this interrogatory as seeking privileged information. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



**INTERROGATORY NO. 4.**

Identify every sale of each of Your Accused Products on a transaction by transaction basis from launch until present, including the seller and its location, the customer to which the sale was made and its location, the number of units of each SKU sold, the price per unit, the total sale amount, and the date of sale.

**RESPONSE:**

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as ambiguous, overly broad, and not proportional to the needs of the case to the extent is calls for "every sale" of the Accused Products, including identifying specific details about each and every sale. AngioDynamics further objects to this Interrogatory to the extent it calls for information subject to the attorney-client privilege and/or work-product privilege. AngioDynamics further objects to this Interrogatory to the extent it calls for information that is properly the subject of expert reports; such information shall be disclosed as required by the Federal Rules of Civil Procedure and the Court's Scheduling Order.

Subject to and without waiving the foregoing general and specific objections, AngioDynamics responds as follows: AngioDynamics objects to this interrogatory as seeking information that is disproportionate to the needs of the case and not kept by AngioDynamics in the ordinary course of business. AngioDynamics further objects to this information as seeking the production of sales information in a manner inconsistent with the agreed procedures of the -218 case. AngioDynamics is willing to meet-and-confer with Bard to discuss what, if any, additional sales discovery is needed beyond the extensive discovery that was already provided in the -218 case.

**INTERROGATORY NO. 5.**

Explain when and how You first became aware of each of the following published patent applications, including the earliest date on which You learned of each and the individuals involved: US 2006/0247584, US 2009/0204072, US 2008/0140025 and US 2010/0211026.

**RESPONSE:**

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as ambiguous, overly broad, and unduly burdensome to the extent it seeks to have AngioDynamics identify "individuals involved" with various patent applications, which may refer to prosecutors, named inventors, unnamed inventors, and other individuals Bard may or may not have disclosed on any official paperwork. AngioDynamics may still not be aware of the actual "individuals involved" with each application, and will update its Response to the extent it discovers unnamed inventors or other unnamed "individuals involved" with such applications. AngioDynamics further objects to this Interrogatory to the extent it seeks information not proportional to the needs of the case, in that awareness of a patent application may be distinguished from awareness of an issued patent.

Subject to and without waiving the foregoing general and specific objections, AngioDynamics responds as follows: AngioDynamics objects to this interrogatory as seeking privileged information and/or information that does not exist in the ordinary course of business.

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████

**INTERROGATORY NO. 6.**

For each of the Bard Patents-In-Suit, identify and describe in detail each alleged noninfringing alternative that You contend can be used as an alternative to the invention(s) disclosed in each of the Bard Patents-In-Suit, including but not limited to: a description of each alleged non-infringing alternative; a description of when and how each alleged non-infringing alternative was developed; the identity of individuals involved in developing and/or most

knowledgeable about each alleged non-infringing alternative (if applicable); dates when each alleged non-infringing alternative was incorporated in an Accused Product (if applicable); costs associated with developing and implementing each alleged non-infringing alternative; and steps and the time required to develop and implement each alleged noninfringing alternative.

**RESPONSE:**

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as premature to the extent it seeks information protected by the attorney-client, work product, or other applicable privilege. AngioDynamics further objects to this Interrogatory to the extent it seeks information responsive to information Bard has not yet provided – Bard has not yet completed its production of relevant documents, and has not adequately provided its theories of infringement, rendering AngioDynamics unable to fully respond to such missing allegations or identify non-infringing alternatives. AngioDynamics further objects to this Interrogatory to the extent it calls for ambiguous, overly broad, and unduly burdensome to the extent it seeks to have AngioDynamics identify "individuals involved in developing and/or most knowledgeable about each alleged non-infringing alternative," which may refer to an unknown number of people, including individuals outside the control of AngioDynamics. AngioDynamics further objects to this Interrogatory to the extent it seeks information that is properly the subject of expert testimony, which will be produced during the time periods provided for in the Scheduling Order. AngioDynamics further objects to this Interrogatory to the extent that it calls for information from another entity, including Bard or a third party, and including any prior art devices manufactured and/or sold by Bard or a third party.

Subject to and without waiving the foregoing general and specific objections, AngioDynamics responds as follows:  this Interrogatory appears to seek expert testimony; expert discovery has not yet begun in this case.



Discovery has only just begun, and AngioDynamics reserves the right to update its response to this Interrogatory as and when appropriate.

OF COUNSEL:                           */s/ Stephanie E. O'Byrne*
Christopher A. Hughes                  David E. Moore (#3983)
John T. Moehringer                     Stephanie E. O'Byrne (#4446)
Danielle V. Tully                      Joseph D. Farris (#6657)
Michael B. Powell                      dmoore@potteranderson.com
CADWALADER, WICKERSHAM &               sobyrne@potteranderson.com
   TAFT LLP                            jfarris@potteranderson.com
200 Liberty Street                     POTTER ANDERSON & CORROON LLP
New York, NY 10281                     Hercules Plaza, 6th Floor
(212) 504-6000                         1313 N. Market Street
                                       Wilmington, DE 19801
Dated: June 21, 2021                   (302) 984-6000
                                       *Attorneys for Defendant and Counterclaim-*
                                       *Plaintiff AngioDynamics, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendant and Counterclaim-Plaintiff AngioDynamics, Inc.'s Responses and Objections to Bard's First Set of Interrogatories (Nos. 1-6) was served upon the following individuals by electronic mail on June 21, 2021 to the following addresses:

Bryon Benevento
  benevento.bryon@dorsey.com

Kimberly Neville
  neville.kimberly@dorsey.com

Brian Egan
  began@morrisnichols.com

Jack Blumenfeld
  jblumenfeld@morrisnichols.com

Matthew Traupman
  matthewtraupman@quinnemanuel.com

Steven Cherny
  stevencherny@quinnemanuel.com

Lauren Martin
  laurenmartin@quinnemanuel.com

<em>/s/ Nicholas A. Ritzmann</em>
Nicholas A. Ritzmann

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| C.R. BARD, INC and | ) | |
| BARD PERIPHERAL VASCULAR, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1544 (CFC) |
| | ) | |
| ANGIODYNAMICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION (1-54)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") hereby propound the following interrogatories upon Defendants AngioDynamics, Inc., ("Defendant" or "AngioDynamics"). Bard requests that each interrogatory be answered separately and fully in writing and under oath, within thirty (30) days, and in the manner prescribed by the Federal Rules of Civil Procedure.

## DEFINITIONS

The following definitions and instructions are to be considered applicable to all specific requests for the production of documents and things:

1.     "Bard" and "Plaintiffs" shall mean C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.

2.     "Angio," "Defendant," "You," or "Your" refers to AngioDynamics, Inc., including any subsidiaries or affiliates, and employees, agents, or Persons acting on its behalf or under its control.

3.     "C.R. Bard" refers to C.R. Bard, Inc.

4.     "BPV" refers to Bard Peripheral Vascular, Inc.

5.      Unless otherwise stated, the term "Person(s)" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

6.      The term "Communication(s)" refers to any transmission of information by one or more Persons and/or between two or more Persons by any means including but not limited to, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, facsimiles, electronic mail or other computer communications, written memoranda, and face-to-face conversations.

7.      The term "Document" shall be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).

8.      The term "Thing" or "Things" is used in the most comprehensive and inclusive sense permitted by Rule 34 of the Federal Rules of Civil Procedure and refers to any tangible object other than a Document, including, but not limited to, prototypes, models, specimens, or other devices, and commercially manufactured items.

9.      The term "Date(s)" shall mean the year, month, day, and time, if known, or if not, the best approximation thereof.

10.      The term "the '302 Patent" refers to U.S. Patent No. 7,785,302 entitled "Access Port Identification Systems and Methods," issued on August 31, 2010 to Kelly B. Powers.

11.      The term "the '022 Patent" refers to U.S. Patent No. 7,947,022 entitled "Access Port Identification Systems and Methods," issued on May 24, 2011 to Murtaza Yusuf Amin, Kevin Sheetz, David M. Cise, Matt Draper, and Kelly B. Powers.

12.      The term "the '615 Patent" refers to U.S. Patent No. 7,959,615 entitled "Access Port Identification Systems and Methods," issued on June 14, 2011 to Jason R. Stats and Kelly B. Powers.

13. The term "Bard Patents-in-Suit" means the '302, the '022, and the '615 Patents.

14. The term "Bard Patent Publications" refers to US 2006/0247584, US 2009/0204072, US 2008/0140025, and US 2010/0211026.

15. The term "Bard Patent Applications" refers to U.S. Provisional Application No. 60/658,518 and U.S. Patent Application Nos. 11/368,954, 12/420,028, and 12/023,280.

16. The term "AngioDynamics Action" means *C.R. Bard, Inc. v. AngioDynamics, Inc.*, C.A. No. 20-1544 (CFC).

17. The term "Bard Asserted Claims" means all patent claims asserted by Bard in this Action.

18. The term Accused Products" refer collectively to the Smart Port® (including CT, CT low-profile and CT mini ports), BioFlo ports with Endexo technology (including plastic single, plastic dual, and titanium single), Xcela ports (including standard titanium, low profile titanium, plastic/titanium, plastic and dual lumen plastic) and Xcela Plus ports (including plastic and titanium), and any of the foregoing ports that are sold as a kit that includes a port plus other instrumentalities, including, but not limited to, a catheter or a catheter lock.

19. The term "Prior Art" means all categories of prior art recited in 35 U.S.C. § 102 and as used in 35 U.S.C. § 103.

20. The term "relating to" is used in its customary broad sense, and without limitation includes referring to, pertaining to, mentioning, concerning, discussing, representing, constituting, embodying, illustrating, describing, evidencing, and tending to support or rebut, in any manner whatsoever and whether directly or indirectly.

21. The terms "all," "any," and "each" shall be construed as encompassing any and all.

22.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

23.     The use of the singular form of any word includes the plural and vice versa.

## **INSTRUCTIONS**

For the purposes of these requests, the following instructions apply:

1.     Pursuant to Rule 34 of the Federal Rules of Civil Procedure, You are requested to respond within 30 days from the date of service of this request.

2.     You are to provide full and complete responses to the following requests, after conducting a diligent and thorough investigation into all information within Your possession, custody, or control.  If you cannot provide a full and complete response to any request, you should respond to the request to the extent possible, specifying the portion of the request you are unable to respond to and providing whatever information you have regarding the unanswered portion.

3.     If You contend that any Document requested to be produced is protected from discovery by the attorney-client privilege, work product doctrine, or any other ground of privilege or immunity, each such Document shall be identified in a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

4.     In producing Documents and Things pursuant to these requests for production, You must produce Documents and Things as they are kept in the usual course of business, or organize and label the Documents and Things to correspond with the categories enumerated below.  *See* Fed. R. Civ. P. 34(b).  If there are no Documents and Things in Your possession, custody or control which are responsive to a request herein, You shall state that fact in Your written response to such request.

5.      Unless otherwise indicated, these requests for production seek all Documents and Things existing or prepared through the Date of production.

6.      If You are aware that a Document within the scope of these requests once existed but has been destroyed, You should make a statement to that effect, identify the Document, state who destroyed the Document, why it was destroyed, and the circumstances under which it was destroyed.

7.      If You are aware of any Document within the scope of these requests that is not being produced for any reason other than a stated objection, You should make a statement to that effect, identify the Document, and state why the Document is not being produced.

8.      If a Document or Thing is in a language other than English and an English translation exists, provide both Documents and Things.

9.      Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

10.      Selection of Documents and Things from the files and other sources and the numbering of such Documents and Things shall be performed in such a manner as to ensure that the source of each Document may be determined, if necessary.

11.      File folders with tables or labels or directories of files identifying Documents and Things called for by these requests must be produced intact with such Documents and Things.

12.      Documents and Things attached to each other shall not be separated.

13.      This request shall be deemed continuing so as to require prompt and further supplemental production if You obtain additional Documents and Things at any time between the time of the initial production and the time of hearing or trial.

14.     These requests shall be deemed continuing so as to require further and supplemental production by You under Federal Rule of Civil Procedure 26(e) whenever You acquire or discover additional information or responsive documents between the time of the initial production hereunder and the time of trial in this action. Should You obtain any other documents or information which would supplement or modify the documents or information supplied by You in response to this request, You are directed to give timely notice of such documents and information and to furnish the additional documents or information to Bard without delay.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1

Complete copies of each 510(k) application, including any amendments or supplements to any 510(k) application, under which the Accused Products are or have been sold.

### REQUEST FOR PRODUCTION NO. 2

All Documents and Things relating to Your business plans, strategic plans, consultant reports, or strategy reviews concerning the Accused Products.

### REQUEST FOR PRODUCTION NO. 3

All communications between or among Angio and the FDA regarding the Accused Products, and all documents and things concerning such communications.

### REQUEST FOR PRODUCTION NO. 4

All Documents and Things relating to the research and development, conception and/or reduction to practice of the Accused Products, including without limitation all lab notebooks, product specifications, drawing, prototypes, test specifications, test results, CAD files and clinical trials of Defendant's Accused Products.

**REQUEST FOR PRODUCTION NO. 5**

All Documents and Things that refer or relate to the instructions for use of the Accused Products, including without limitation user manuals, instructional guides, training manuals, package inserts or labels.

**REQUEST FOR PRODUCTION NO. 6**

Five samples of each of the Accused Products, including without limitation the original packaging and all written materials provided with each of the Accused Products.

**REQUEST FOR PRODUCTION NO. 7**

All Documents and Things relating to the Bard Patents-in-Suit, including without limitation Documents analyzing the scope and validity of the claims of such patents.

**REQUEST FOR PRODUCTION NO. 8**

All Documents and Things supporting, refuting or otherwise relating to any contention by Defendant that the Bard Patents-in-Suit are invalid, including without limitation all documents and things that Defendant contends are Prior Art to the Bard Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 9**

Operative design drawings, manufacturing procedures, specifications, and SolidWorks files for each of the Accused Products.

**REQUEST FOR PRODUCTION NO. 10**

All Documents and Things relating to Defendant's knowledge or awareness of the Bard Patents-In-Suit, the Bard Patent Applications, and/or the Bard Patent Publications.

**REQUEST FOR PRODUCTION NO. 11**

All Documents and Things relating to any product that Defendant contends renders invalid any claim of the Bard Patents-in-Suit, including without limitation documents relating to  the origin,

design, experimentation, modeling, testing, sale, offer for sale, public use or presentation of such product.

**REQUEST FOR PRODUCTION NO. 12**

All Documents and Things supporting, refuting or otherwise relating to any contention by You that You do not infringe the Bard Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 13**

All Documents and Things relating to any effort, attempt, implementation, or consideration by or for You, to design around any claims of the Bard Patents-in-Suit, including without limitation the feasibility, cost, customer acceptance, and time for any such design around, and any analysis or opinion of counsel.

**REQUEST FOR PRODUCTION NO. 14**

All business plans, case studies, whitepapers, product comparisons or marketing materials  that relate to the vascular access port market.

**REQUEST FOR PRODUCTION NO. 15**

All studies, reports, articles, and other reference materials related to the market for vascular access ports indicated for use in power injection procedures, including but without limitation the size, customer base, competition and both anticipated and actual market share information for the years 2006 to the present.

**REQUEST FOR PRODUCTION NO. 16**

All Documents and Things relating to the design, development, or testing of a port indicated for use in power injection procedures, regardless of whether the port was ever commercialized, including without limitation all case studies, whitepapers, product comparisons or product specifications, test plans, or test results.

**REQUEST FOR PRODUCTION NO. 17**

All Documents and Things relating to any non-infringement opinion (whether written or oral) for the Bard Patents-in-Suit, including without limitation all documents forming the basis of such opinion.

**REQUEST FOR PRODUCTION NO. 18**

All Documents and Things relating to any invalidity or non-enforceability opinion (whether written or oral) with respect to the Bard Patents-in-Suit, including without limitation all documents forming the basis of such opinion.

**REQUEST FOR PRODUCTION NO. 19**

All Documents AngioDynamics intends to rely on to establish the level of ordinary skill in the art to which any of the Bard Patents-in-Suit pertain.

**REQUEST FOR PRODUCTION NO. 20**

All Documents relating to Defendant's policies and procedures (whether formal, informal, written, or unwritten) for patent clearance of new products, technologies or projects.

**REQUEST FOR PRODUCTION NO. 21**

All Documents relating to any effort, activity or other undertaking to duplicate, copy, modify or replicate in any way any feature of Bard Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 22**

All Documents and Things relating to Defendant's use of or reference to Bard's  products or materials in the development of Defendant's Accused Products.

**REQUEST FOR PRODUCTION NO. 23**

All Documents and Things relating to the burst pressure, maximum pressure, or minimum pressure of the Accused Products, including all product specifications, case studies, whitepapers, product comparisons or marketing materials that reference the burst, maximum, or minimum pressure.

**REQUEST FOR PRODUCTION NO. 24**

All Documents and Things relating to Angio's decision to use radiopaque indicia to identify its ports as power injectable, including all business plans, case studies, whitepapers, or memoranda.

**REQUEST FOR PRODUCTION NO. 25**

All documents, presentations or training materials provided to Angio's sales people from 2006 to the present regarding implantable port products.

**REQUEST FOR PRODUCTION NO. 26**

All Documents and Things relating to advertising for the Accused Products.

**REQUEST FOR PRODUCTION NO. 27**

All documents, presentations, manuals, programs or guides regarding market competition with Bard.

**REQUEST FOR PRODUCTION NO. 28**

All Documents and Things relating to power injection testing on Angio's commercial port products, not limited to products indicated for use in power injection.

**REQUEST FOR PRODUCTION NO. 29**

All Documents and Things relating to Angio's decision to use scalloped sides on its CT and CT low profile SmartPort port products.

**REQUEST FOR PRODUCTION NO. 30**

Past and present organizational charts sufficient to show Defendant's organizational structure and the names, positions, titles, duties, and reporting relationships of directors, officers, employees, and other personnel in any groups, divisions, or departments who have or have had responsibility for or duties related to the research, design, development, manufacture, repair, operation, sales, marketing, licensing, competitive analysis, or enforcement of any subject matter relating to any of Defendant's Accused Products.

**REQUEST FOR PRODUCTION NO. 31**

Documents sufficient to show research and development costs for the Accused Products.

**REQUEST FOR PRODUCTION NO. 32**

Documents sufficient to show cost of goods sold for each Accused Products from launch to present.

**REQUEST FOR PRODUCTION NO. 33**

Documents sufficient to show revenue and profit on each Accused Product from launch until present.

**REQUEST FOR PRODUCTION NO. 34**

All Documents and Things comparing the Accused Products to any Bard port product,  including without limitation sales and engineering documents.

**REQUEST FOR PRODUCTION NO. 35**

All licensing agreements, covenants-not-to-sue, and/or settlement agreements relating to the Defendant's Accused Products.

**REQUEST FOR PRODUCTION NO. 36**

All Documents relating to license proposals or negotiations or agreements with any third party for any technology used in or relating to Defendant's Accused Products.

**REQUEST FOR PRODUCTION NO. 37**

Documents sufficient to show the price for each of the Accused Products from launch until present.

**REQUEST FOR PRODUCTION NO. 38**

All Documents and Things relating to Defendant's policies and/or practices, whether formal or informal, written or otherwise, for licensing or valuing intellectual property, technology, or know-how.

**REQUEST FOR PRODUCTION NO. 39**

Documents sufficient to show when Defendant began to design, market, and sell the Accused Products.

**REQUEST FOR PRODUCTION NO. 40**

Documents relating to Angio's contracts with group health organizations, integrated delivery networks or other group purchasing organizations that involve the Accused Products, including price lists.

**REQUEST FOR PRODUCTION NO. 41**

Documents sufficient to show the location where the Accused Products are manufactured.

**REQUEST FOR PRODUCTION NO. 42**

Documents sufficient to show, by quarter, the number of units of the Accused Products that were sold and the identity of each customer that made each purchase.

**REQUEST FOR PRODUCTION NO. 43**

Documents and Things sufficient to identify all of Defendant's document retention policies and practices, whether or not written and whether formal or informal.

**REQUEST FOR PRODUCTION NO. 44**

Documents and Things sufficient to show the organization, classification, structure, management, and protocol of Defendant's current document control or document filing systems.

**REQUEST FOR PRODUCTION NO. 45**

All Documents and Things supporting, refuting or otherwise relating to any of the allegations, contentions, defenses, counterclaims and requested relief contained in any pleading filed by Defendant.

**REQUEST FOR PRODUCTION NO. 46**

For each defense, whether affirmative or otherwise, asserted by Defendant in this action, all documents and communications supporting, refuting, or otherwise relating to such defense.

**REQUEST FOR PRODUCTION NO. 47**

For each counterclaim asserted by Defendant in this action, all documents and communications supporting, refuting, or otherwise relating to such counterclaim.

**REQUEST FOR PRODUCTION NO. 48**

All documents that Defendant intends to rely on at trial or any hearing in this action.

**REQUEST FOR PRODUCTION NO. 49**

All documents that Defendant or its counsel supplied to any declarant, witness, or expert for use in this litigation.

**REQUEST FOR PRODUCTION NO. 50**

All Documents and Things that Defendant may use as an exhibit in any trial, hearing, submission to the court, or deposition in this civil action.

**REQUEST FOR PRODUCTION NO. 51**

All Documents and Things identified or referred to in, or relied upon to prepare, Defendant's responses to any interrogatory in this civil action.

**REQUEST FOR PRODUCTION NO. 52**

All Documents and Things cited in or relied on in responding to any  interrogatory served on Defendant in this civil action.

**REQUEST FOR PRODUCTION NO. 53**

All Documents and Things concerning the arrival at and departure from any warehouse in the United States of any of the Accused Products, including documents concerning the importation status of each product, from launch to the present.

**REQUEST FOR PRODUCTION NO. 54**

All Documents and Things concerning or relating to AngioDynamics' costs relating to , marketing and sale of the Accused Products.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

Steven C. Cherny
Lauren Martin
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA  02199
(617) 712-7100

Matthew A. Traupman
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227))
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.*

May 21, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 21, 2021, copies of the foregoing were caused to be served

upon the following in the manner indicated:

David E. Moore, Esquire                                            *VIA ELECTRONIC MAIL*
Stephanie E. O'Byrne, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant AngioDynamics, Inc.*


John T. Moehringer, Esquire                                       *VIA ELECTRONIC MAIL*
Christopher A. Hughes, Esquire
Danielle V. Tully, Esquire
Michael B. Powell, Esquire
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281
*Attorneys for Defendant AngioDynamics, Inc.*




*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| C.R. BARD, INC and BARD PERIPHERAL VASCULAR, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 20-1544 (CFC) |
| ANGIODYNAMICS, INC., | ) ) | |
| Defendant. | ) ) | |

### PLAINTIFFS' SECOND SET OF
### REQUESTS FOR PRODUCTION (55-70)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") hereby propound the following requests for production upon Defendants AngioDynamics, Inc. ("Defendant" or "Angio").  Defendant shall produce all Documents and Things that are responsive to these requests within thirty (30) days of service at Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, New York, NY 10010. Defendant further subject to a duty to supplement its responses to these requests pursuant to Federal Rule of Civil Procedure 26(e).

### DEFINITIONS

Bard incorporates by reference the Definitions set forth in its First Set of Requests for Production.

## INSTRUCTIONS

Bard incorporates by reference the Instructions set forth in its First Set of Requests for Production.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 55

The complete design history files for the SmartPort, SmartPort Low Profile, SmartPort Mini, SmartPort+, Xcela, Xcela Plus and BioFlo products, including the complete design history files or any line extension for each of those products.

### REQUEST FOR PRODUCTION NO. 56

The most recent version of design drawings for SmartPort, SmartPort Low Profile, SmartPort Mini (including but not limited to drawings for the components of CT50PTPD, CT75STSA, CT75STSD, CT75STSD-NF, CT80STPD, CT80STPD-NF, CT96STSA, CT96STSD, CT96STSD-NF), SmartPort+, Xcela, Xcela Plus and BioFlo products, including drawings for each component of each product and the assembly of each product.

### REQUEST FOR PRODUCTION NO. 57

The most recent version of the bill of materials ("BOM") for SmartPort, SmartPort Low Profile, SmartPort Mini (including but not limited to the BOM for CT50PTPD, CT75STSA, CT75STSD, CT75STSD-NF, CT80STPD, CT80STPD-NF, CT96STSA, CT96STSD, CT96STSD-NF), SmartPort+, Xcela, Xcela Plus and

BioFlo products, including drawings for each component of each product and the assembly of each product.

**REQUEST FOR PRODUCTION NO. 58**

All "Engineering Change Order" ("ECO") files for the SmartPort, SmartPort Low Profile, SmartPort Mini (including but not limited to ECOs for CT50PTPD, CT75STSA, CT75STSD, CT75STSD-NF, CT80STPD, CT80STPD-NF, CT96STSA, CT96STSD, CT96STSD-NF), SmartPort+, Xcela, Xcela Plus and BioFlo products.

**REQUEST FOR PRODUCTION NO. 59**

All Work Orders and Engineering Change Order ("ECO") files for part numbers 107046 and 107047 including but not limited to ECO 07-319.   (*See, e.g.,* DELANGIO_00053387).

**REQUEST FOR PRODUCTION NO. 60:**

Ten physical samples of each SKU of the SmartPort+ product.

**REQUEST FOR PRODUCTION NO. 61:**

All documents and things concerning Angio's decision to develop the SmartPort+.

**REQUEST FOR PRODUCTION NO. 62:**

All documents and things concerning the development of the SmartPort+.

**REQUEST FOR PRODUCTION NO. 63:**

All documents and things concerning Angio's marketing of the SmartPort+, including but not limited to all marketing materials.

**REQUEST FOR PRODUCTION NO. 64:**

Documents sufficient to show the cost of goods sold for all models of the SmartPort, SmartPort+, Xcela, Xcela Plus and BioFlo products from launch until present.

**REQUEST FOR PRODUCTION NO. 65:**

Documents sufficient to show Angio's sales for SmartPort+.

**REQUEST FOR PRODUCTION NO. 66:**

The complete design history file for Project # 100247.

**REQUEST FOR PRODUCTION NO. 67:**

Each document referenced in DELANGIO_00006280.

**REQUEST FOR PRODUCTION NO. 68:**

All versions and revisions of the following drawings:  107169, CT66PTPD BOM,  107168, CT66LTPD BOM, 106105, CT50PTPD BOM, CT80STPA-VI BOM, 107108, CT96STSD-VI BOM, 105934, CT96STSD-NF BOM, CT75STSD-NFVI BOM, CT80STPD BOM, CT96STSD-VI BOM, CT80STPA BOM, CT96STSA BOM, CT80STPD-NFVI BOM, CT80STPA-VI BOM, 107046 BOM, 107047 BOM, CT80STPD-NF BOM, 10610070, 40057002, 107040, 106949,

4

103432, 103531, 107199, 103542, 103443, 107156, 107227, 107107, 105209, 103437, 106105.

**REQUEST FOR PRODUCTION NO. 69:**

The "DHR Traveler" documents for SmartPort, SmartPort Low Profile, SmartPort Mini, SmartPort+, Xcela, Xcela Plus and BioFlo products.

**REQUEST FOR PRODUCTION NO. 70:**

Documents sufficient to show revenue and profit for the SmartPort+ from launch until present.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

Steven C. Cherny
Matthew A. Traupman
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

Lauren Martin
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA  02199
(617) 712-7100

May 1, 2023

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2023, copies of the foregoing were caused to

be served upon the following in the manner indicated:

David E. Moore, Esquire                                   *VIA ELECTRONIC MAIL*
Bindu A. Palapura, Esquire
Brandon R. Harper, Esquire
Andrew L. Brown, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant*
*AngioDynamics, Inc.*

John T. Moehringer, Esquire                           *VIA ELECTRONIC MAIL*
Danielle V. Tully, Esquire
Michael B. Powell, Esquire
CADWALADER, WICKERSHAM
    & TAFT LLP
One World Financial Center
New York, NY  10281
*Attorneys for Defendant*
*AngioDynamics, Inc.*

/s/ *Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)

# Exhibit 4



# AngioDynamics: Oracle Demand Management Cloud Implementation

 (https://www.angiodynamics.com/)

*"The Triniti team helped us take our first step in the Oracle Cloud journey with Oracle Demand Management Cloud. They helped both the AngioDynamics IT and Forecasting teams focus on business processes and the overall solution design. Triniti's deep understanding of business and application capabilities was a key driver. Their ability to listen to our needs and then understand any gaps between our needs and the application capabilities was essential to knowing upfront what to expect with a final solution. When gaps were identified, the Triniti team was able to get creative to find alternative and suitable solutions"*

**- Dan Bolduc, Sr. Director - IT Enterprise Systems, AngioDynamics**

## As-is Business Process Challenges

- Excel and Email based collaboration for capturing field intel for forecasting
- Time-consuming spreadsheet-based forecasting
- Data integrity difficulties due to the manual process

## Missing As-is Functions

- Managing demand for new items - no visibility to Demand Planners
- Customer level forecasting capability
- A well-defined process for forecasting Capital items and PTO items

## Solution Highlights



## Business Benefits

- Flexibility to Demand Planners to turn on/ off the SKUs for forecasting using a flag in the ERP system
- Robust Metrics to calculate Forecast Accuracy
- Ability to drill in/ out to review the data at different granularities
- Basic revenue projection as a bridge to implementing full-fledged Sales & Operations Planning in the future
- Review the Demand History for the last three year with the forecast in a single report
- Forecast accuracy and the resulting impact on excess inventory carrying cost is in the process of being measured

## Triniti Value Add

- "Demand Management Audit" plug-in
- Demand History staging area in EBS for ad-hoc reporting
- "Cloud Integration" extension for on-premise EBS

---

Call 866-531-9587 (tel:8665319587) / Fill out the contact form
(https://tri2.triniti.com:8443/ContactMDM/faces/TrinitiContactus.jspx?
source_url=https://www.triniti.com/oracle-demand-management-cloud-

implementation).

---

## Follow us on social media

Add your voice to the conversation and get the latest news, views, and insights

 (https://www.youtube.com/channel/UCzPtMReoTPc3WLD8eEJnX7A) 

(https://twitter.com/TrinitiCorp) [f] (https://www.facebook.com/TrinitiCorp/) [in] (https://in.linkedin.com/company/triniti-corporation)

© 2023 All rights reserved - Triniti.com

# Exhibit 5



DATA
COMMUNICATION SOLUTIONS INC.
B2B Integration for your business

Solutions        Business Applications        Learning Center        About Us        Blog

Contact Us

‹ Previous    Next ›



# DCS Helps Medical Devices Company Connect to Canada

Privacy • Terms


DATA
COMMUNICATION SOLUTIONS INC.
B2B Integration for your business

Solutions        Business Applications        Learning Center        About Us        Blog

wanted to enter the Canada market for their industry. However, rather than spending the
time and money to create their own warehouse, they opted to work with a 3rd party
warehouse (UPS).

Contact Us

. uses Oracle ERP, which doesn't support 3rd Party Logistics (3PL) by design.
For Oracle, all 3PL are out of scope and must be custom written. Additionally,
AngioDynamics uses OpenText/GXS BizManager translation and mapping software for EDI
conversion. Since this was their first 3PL experience, they had never implemented the 900
series warehouse documents.

AngioDynamics turned to Data Communication Solutions (DCS) for help. DCS specialists
Tom Kenyon and Karun Puni took on the project.

**The EDI Challenge**

DCS needed to design and develop a scalable 3PL warehouse solution for AngioDynamics.
This encompassed the 940, 943, 944, 945, and 947 warehouse transactions. Because the
transactions are not supported by Oracle, custom maps had to be created from scratch. All
changes had to be handled on AngioDynamics' end.

**The DCS Solution**

To accomplish AngioDynamic's goals, DCS first customized the gateway process to include
the 940, 943, 944, 945, and 947. EDI mapping and testing was completed after
customization. Integration occurred jointly between DCS and AngioDynamics. The end
result was an EDI process allowing for AngioDynamics to easily connect with the 3PL.

The first step in the new EDI process is for the AngioDynamics customer to generate an
outbound order which is sent to AngioDynamics. This triggers the chain of events and
documents which are passed back and forth between AngioDynamics and the 3PL. When
the 3PL ships the order, they will send a 945 (warehouse shipping advice) to
AngioDynamics. AngioDynamics then generates an 856 (advance ship notice) to reach the
customer before the shipment arrives. Because AngioDynamics had never used any of the
900 series transactions, DCS designed and tested each step of the way.

The chart below shows how information is processed between the customer,
AngioDynamics, and the 3PL:



Solutions    Business Applications    Learning Center    About Us    Blog

Contact Us



## The Result

Thanks to DCS' work, AngioDynamics is selling in Canada. With this solution, they are looking to enter into newer markets. If AngioDynamics does enter into new markets, DCS will continue to help them with any tweaks to the standard Oracle/BizManager-3PL solution created for Canada.

"We have been live for a month and a half and things are starting to settle in," AngioDynamics' Oracle Systems administrator told us in December. "The programs that DCS worked with us on are working great."

One of the many benefits to working with DCS is that we train the customer as we go to encourage self-sufficiency. At the same time, we're always available to call for help.  Just as we benefitted AngioDynamics, DCS can provide the best EDI solutions for your company's challenges. Contact us today to learn what we can do for you.

## About the Associates

**Tom Kenyon** joined the DCS team in 2007 as an EDI Specialist. He first became familiar with Electronic Data Interchange (EDI) programming in 1995 when he was contracted to build a customized document integration platform to support communication in a community of schools near Phoenix, Arizona. For over twenty years he has continued to broaden his knowledge of all aspects of electronic data transformation, communication, and security. He has experience supporting various ERP systems such as SAP, Infor Visual,



DATA
COMMUNICATION SOLUTIONS INC.
B2B Integration for your business

Solutions    Business Applications    Learning Center    About Us    Blog

Contact Us

**Karun Puni** has two decades of Oracle ERP-centric global IT experience. He has extensive Oracle ERP implementation experience and a thorough understanding of onside, near-shore, and off shore delivery models. Karun has a strong functional knowledge of distribution, and financial verticals. He has successfully executed many i-organization, multi-site, and multi-currency implementation projects.

By DCS | January 20, 2017 | Case Studies | Comments Off

## Share This Story, Choose Your Platform!



## About the Author: DCS

## Related Posts









**DATA COMMUNICATION SOLUTIONS INC.**
B2B Integration for your business

Contact Us

🔍

## Contact Info:

2626 E 82nd Street, Suite 104
Bloomington, MN 55425
Phone: 952-941-5466
Fax: 952-681-2145
Email: info@dcsedi.com
Web: www.dcs-is-edi.com

## Menu

> Home

> Company History

> Services

> Industries

> Case Studies

> Resources

> Blog

> Careers

> Contact Us

> Sitemap

## Recent Post

> What is E2E in Supply Chain Management?

> Why Is Strategic Sourcing Important?

> How COVID 19 changed EDI systems and processes

> Fixes for the 4 Most Common EDI System Issues

> EDI Cost of Implementation & Cost Saving EDI Solutions

> Why EDI Is Critical to Your Supply Chain

> Check Out DCS' Automotive EDI Cheat Sheet!

## Subscribe to Our Newsletter

Learn about the latest in the industry, upcoming events, product announcements and more.

Your email:

Enter email addr

Subscribe

Unsubscribe

## Get Social

f  🐦  ▶  in  ✉

📞

Solutions   Business Applications   Learning Center   About Us   Blog



Solutions        Business Applications        Learning Center        About Us        Blog

Contact Us        🔍



# Exhibit 6

| **From:** | Lauren Martin |
|---|---|
| **Sent:** | Thursday, May 4, 2023 9:40 PM |
| **To:** | Angio Delaware-External; 'Moore, David E.'; 'Palapura, Bindu A.' |
| **Cc:** | Bard v Angiodynamics - QE team; Blumenfeld, Jack; 'Egan, Brian P.' |
| **Subject:** | C.R. Bard v. AngioDynamics, 20-1544 |

Counsel:

Angio's responses to ROGs 3-5 are deficient.  ROG 3 asks, *inter alia*, for an "explanation of when and how You first became aware of each Bard Patent-in-Suit." ROG 5 asks Angio to "[e]xplain when and how You first became aware of each of the following published patent applications, including the earliest date on which You learned of each and the individuals involved: US 2006/0247584, US 2009/0204072, US 2008/0140025 and US 2010/0211026."  In response to both, you object on privilege grounds, object because ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████  Based on those responses, it appears that Angio is refusing to provide discovery regarding when it actually learned of the asserted patents and underlying patent publications on privilege grounds.  That is improper.  Awareness of a patent or patent publication is not privileged.  The date when Angio first learned of the patents and publications is also not privileged, nor are the individuals involved.  These are all facts, not legal advice or attorney work product.

ROG 4 asks Angio to "[i]dentify every sale of each of Your Accused Products on a transaction by transaction basis from launch until present, including the seller and its location, the customer to which the sale was made and its location, the number of units of each SKU sold, the price per unit, the total sale amount, and the date of sale."  Angio does not provide any substantive response to this interrogatory and instead objects to it as allegedly "inconsistent" with "the agreed procedures of the -218 case."  That is not a proper objection.  This is not the -218 case, and in any event whatever agreement the parties may have had about damages production in the -218 case does not excuse Angio from its obligations under the Federal Rules to respond to interrogatories.

Please provide your availability next Monday or Tuesday to meet and confer on these issues.

Best,

**Lauren Martin**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

111 Huntington Ave Suite 520
Boston, MA 02199
617-712-7105 Direct
617.712.7100 Main Office Number
617.712.7200 FAX
laurenmartin@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# Exhibit 7

| From: | Augelli, John <John.Augelli@cwt.com> |
|---|---|
| Sent: | Friday, May 5, 2023 1:29 PM |
| To: | Lauren Martin; Angio Delaware-External; 'Moore, David E.'; 'Palapura, Bindu A.' |
| Cc: | Bard v Angiodynamics - QE team; Blumenfeld, Jack; 'Egan, Brian P.' |
| Subject: | RE: C.R. Bard v. AngioDynamics, 20-1544 |

[EXTERNAL EMAIL from john.augelli@cwt.com]

Counsel,

We are not "refusing to provide discovery" on ROGs 3 and 5.  Discovery is ongoing and our responses reflect our current understanding.  If and when we discover additional information, we will update our responses.

On Rog 4, we are willing to meet and confer with Bard on the scope of its request.  As you know, this case is set for trial in less than a year due in large part to Bard's continued representation that efficiencies in this case can be gained by using discovery from the -218 case and that discovery is largely complete here.  But any efficiencies will be lost if Bard continues to move the goal posts on discovery.  We did not produce "transaction by transaction" sales data in the -218 case.  It would be inefficient and not proportional to the needs of the case to do so here.  What are Bard's reasons for needing transaction-by-transaction sales data? Please provide your supporting authority that this would be proportional to the needs of this case.

We are available to meet and confer on Tuesday at 12.  Please send a conference line if that works for Bard.

Thanks,

**John T. Augelli**
*Associate*
Cadwalader, Wickersham & Taft LLP
200 Liberty Street, New York, NY 10281
Tel: +1 (212) 504-6136 | Fax: +1 (212) 504-6666
john.augelli@cwt.com | www.cadwalader.com

---

**From:** Lauren Martin <laurenmartin@quinnemanuel.com>
**Sent:** Thursday, May 4, 2023 9:40 PM
**To:** Angio Delaware-External <Angio-Delaware.External@cwt.com>; 'Moore, David E.' <dmoore@potteranderson.com>; 'Palapura, Bindu A.' <bpalapura@potteranderson.com>
**Cc:** Bard v Angiodynamics - QE team <bardvangiodynamics-qeteam@quinnemanuel.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>; 'Egan, Brian P.' <began@morrisnichols.com>
**Subject:** C.R. Bard v. AngioDynamics, 20-1544

> **Caution:** This email originated from outside of CWT. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel:

Angio's responses to ROGs 3-5 are deficient.  ROG 3 asks, *inter alia*, for an "explanation of when and how You first became aware of each Bard Patent-in-Suit." ROG 5 asks Angio to "[e]xplain when and how You first became aware of each of the following published patent applications, including the earliest date on which You learned of each and the individuals involved: US 2006/0247584, US 2009/0204072, US 2008/0140025 and US 2010/0211026."  In response to both, you object on privilege grounds, object ██████████████████████████████████████████
████████████████████████████████████████████████████████████████  Based on those responses, it appears that Angio is refusing to provide discovery regarding when it actually learned of the asserted patents and underlying patent publications on privilege grounds.  That is improper.  Awareness of a patent or patent publication is not privileged.  The date when Angio first learned of the patents and publications is also not privileged, nor are the individuals involved.  These are all facts, not legal advice or attorney work product.

ROG 4 asks Angio to "[i]dentify every sale of each of Your Accused Products on a transaction by transaction basis from launch until present, including the seller and its location, the customer to which the sale was made and its location, the number of units of each SKU sold, the price per unit, the total sale amount, and the date of sale."  Angio does not provide any substantive response to this interrogatory and instead objects to it as allegedly "inconsistent" with "the agreed procedures of the -218 case."  That is not a proper objection.  This is not the -218 case, and in any event whatever agreement the parties may have had about damages production in the -218 case does not excuse Angio from its obligations under the Federal Rules to respond to interrogatories.

Please provide your availability next Monday or Tuesday to meet and confer on these issues.

Best,

**Lauren Martin**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

111 Huntington Ave Suite 520
Boston, MA 02199
617-712-7105 Direct
617.712.7100 Main Office Number
617.712.7200 FAX
laurenmartin@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

NOTE: The information in this email is confidential and may be legally privileged.  If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy.  Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way from its use.

# Exhibit 8

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (04-09)
Approved for use through 05/31/2009. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | | |
|---|---|---|
| Application Number | 11536363 | |
| Filing Date | 2006-09-28 | |
| First Named Inventor | Worthley, et al. | |
| Art Unit | 3763 | |
| Examiner Name | Campbell, Victoria P. | |
| Attorney Docket Number | 19137.0054U1 | |

| **U.S.PATENTS** | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 7191011 | | 2007-03-13 | Cantlon | |

| If you wish to add additional U.S. Patent citation information please click the Add button. | Add |
|---|---|

| **U.S.PATENT APPLICATION PUBLICATIONS** | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 20080319405 | | 2008-12-25 | Bizup | |
| | 2 | 20080140025 | | 2008-06-12 | Sheetz et al. | |
| | 3 | 20080108949 | | 2008-05-08 | Beasley et al. | |
| | 4 | 20080065181 | | 2008-03-13 | Stevenson | |
| | 5 | 20080004642 | | 2008-01-03 | Birk et al. | |

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | |
|---|---|---|

| Application Number | 11536363 |
|---|---|
| Filing Date | 2006-09-28 |
| First Named Inventor | Worthley, et al. |
| Art Unit | 3763 |
| Examiner Name | Campbell, Victoria P. |
| Attorney Docket  Number | 19137.0054U1 |

| | | | | | |
|---|---|---|---|---|---|
| | 6 | 20070276344 | | 2007-11-29 | Bizup et al. |
| | 7 | 20070270770 | | 2007-11-22 | Bizup |
| | 8 | 20070233018 | | 2007-10-04 | Bizup et al. |
| | 9 | 20070233017 | | 2007-10-04 | Zinn et al. |
| | 10 | 20070219510 | | 2007-09-20 | Zinn et al. |
| | 11 | 20070123823 | | 2007-05-31 | Cantlon |
| | 12 | 20070073250 | | 2007-03-29 | Schneiter |
| | 13 | 20060247584 | | 2006-11-02 | Sheetz et al. |
| | 14 | 20060224129 | | 2006-10-05 | Beasley et al. |
| | 15 | 20060184142 | | 2006-08-17 | Schon et al. |
| | 16 | 20060178648 | | 2006-08-10 | Barron et al. |

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 11536363 |
| Filing Date | 2006-09-28 |
| First Named Inventor | Worthley, et al. |
| Art Unit | 3763 |
| Examiner Name | Campbell, Victoria P. |
| Attorney Docket Number | 19137.0054U1 |

| | | | | | |
|---|---|---|---|---|---|
| 17 | 20030181878 | | 2003-09-25 | Tallarida et al. | |

If you wish to add additional U.S. Published Application citation information please click the Add button. | Add |

## FOREIGN PATENT DOCUMENTS

Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button | Add |

## NON-PATENT LITERATURE DOCUMENTS

Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button | Add |

## EXAMINER SIGNATURE

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

# Exhibit 9

PTO/SB/08b (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | **Complete if Known** | |
|---|---|---|---|---|
| | | | Application Number | 12/207,205 - Conf. # 1299 |
| | | | Filing Date | September 9, 2008 |
| | | | First Named Inventor | Jeff Gray et al. |
| | | | Art Unit | 3767 |
| | | | Examiner Name | Bradley G. THOMAS, JR. |
| Sheet | 1 | of | 5 | Attorney Docket Number | 3008069-7061762001 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A4* | US-3,159,175 | 12-01-1964 | Macmillan | |
| | A5* | US-3,477,438 | 11-11-1969 | Allen et al. | |
| | A6* | US-3,525,357 | 08-25-1970 | Koreski | |
| | A7* | US-3,541,438 | 11-17-1970 | Nelsen et al. | |
| | A8* | US-3,669,323 | 06-13-1972 | Harker et al. | |
| | A9* | US-3,674,183 | 07-04-1972 | Venable et al. | |
| | A10* | US-3,811,466 | 05-21-1974 | Ohringer | |
| | A11* | US-3,853,127 | 12-10-1974 | Spademan | |
| | A12* | US-3,955,594 | 05-11-1976 | Snow | |
| | A13* | US-3,971,376 | 06-17-1976 | Wichterle | |
| | A14* | US-4,143,853 | 03-13-1979 | Abramson | |
| | A15* | US-4,447,237 | 05-08-1984 | Frisch et al. | |
| | A16* | US-4,453,088 | 09-24-1985 | Bootman et al. | |
| | A17* | US-4,610,665 | 09-09-1986 | Matsumoto et al. | |
| | A18* | US-4,692,146 | 09-08-1987 | Hilger | |
| | A19* | US-4,772,270 | 09-20-1988 | Waiita et al. | |
| | A20* | US-4,781,680 | 11-01-1988 | Redmond et al. | |
| | A21* | US-4,802,885 | 02-07-1989 | Weeks et al. | |
| | A22* | US-4,857,053 | 08-15-1989 | Dalton | |
| | A23* | US-4,886,501 | 12-12-1989 | Johnston et al. | |
| | A24* | US-4,886,502 | 12-12-1989 | Poirier et al. | |
| | A25* | US-4,892,518 | 01-09-1990 | Cupp et al. | |
| | A26* | US-4,897,081 | 01-30-1990 | Poirier et al. | |
| | A27* | US-4,904,241 | 02-27-1990 | Bark | |
| | A28* | US-4,908,029 | 03-13-1990 | Bark et al. | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B1 | EP-0128525 | 12-19-1984 | | | |
| | B2 | EP-0343910 | 11-29-1989 | | | |
| | B3 | EP-0366814 | 05-09-1990 | | | |
| | B4 | FR-2508008 | 12-24-1982 | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.  * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW.  [1] Applicant's unique citation designation number (optional).  [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3).  [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [6] Applicant is to place a check mark here if English language Translation is attached.

PTO/SB/08b (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 12/207,205 - Conf. # 1299 |
| | Filing Date | September 9, 2008 |
| | First Named Inventor | Jeff Gray et al. |
| | Art Unit | 3767 |
| | Examiner Name | Bradley G. THOMAS, JR. |
| Sheet   2   of   5 | Attorney Docket Number | 3008069-7061762001 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A29* | US-4,929,236 | 05-29-1990 | Sampson | |
| | A30* | US-5,009,391 | 04-23-1991 | Steigerwald | |
| | A31* | US-5,009,644 | 04-23-1991 | McDonald | |
| | A32* | US-5,045,060 | 09-03-1991 | Melsky et al. | |
| | A33* | US-5,053,013 | 10-01-1991 | Ensimger et al. | |
| | A34* | US-5,059,186 | 10-22-1991 | Yamamoto et al. | |
| | A35* | US-5,069,206 | 12-03-1991 | Crosbie | |
| | A36* | US-5,084,015 | 01-28-1992 | Moriuchi | |
| | A37* | US-5,092,849 | 03-03-1992 | Sampson | |
| | A38* | US-5,129,891 | 07-14-1992 | Young | |
| | A39* | US-5,137,529 | 08-11-1992 | Watson et al. | |
| | A40* | US-5,147,483 | 09-15-1992 | Melsky et al. | |
| | A41* | US-5,167,638 | 12-01-1992 | Felix et al. | |
| | A42* | US-5,180,365 | 01-19-1993 | Ensminger et al. | |
| | A43* | US-5,205,834 | 04-27-1993 | Moorehead et al. | |
| | A44* | US-5,242,415 | 09-07-1993 | Kantrowitz et al. | |
| | A45* | US-5,249,598 | 10-05-1993 | Schmidt | |
| | A46* | US-5,263,930 | 11-23-1993 | Ensminger | |
| | A47* | US-5,281,199 | 01-25-1994 | Ensminger et al. | |
| | A48* | US-5,312,337 | 05-17-1994 | Flaherty et al. | |
| | A49* | US-5,350,360 | 09-27-1994 | Ensminger et al. | |
| | A50* | US-5,318,545 | 06-07-1994 | Tucker | |
| | A51* | US-5,352,204 | 10-04-1994 | Ensminger | |
| | A52* | US-5,356,381 | 10-18-1994 | Ensminger et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B5 | FR-2809315 | 11-30-2001 | | | |
| | B6 | GB-2102398 | 02-02-1983 | | | |
| | B7 | GB-0966137 | 08-06-1964 | | | |
| | B8 | WO-92/006732 | 04-30-1992 | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.  * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW.  [1] Applicant's unique citation designation number (optional).  [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3).  [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [6] Applicant is to place a check mark here if English language Translation is attached.

PTO/SB/08b (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | **Complete if Known** | |
|---|---|---|
| | Application Number | 12/207,205 - Conf. # 1299 |
| | Filing Date | September 9, 2008 |
| | First Named Inventor | Jeff Gray et al. |
| | Art Unit | 3767 |
| | Examiner Name | Bradley G. THOMAS, JR. |
| Sheet | 3 | of | 5 | Attorney Docket Number | 3008069-7061762001 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A53* | US-5,387,192 | 02-07-1995 | Glantz et al. | |
| | A54* | US-5,396,925 | 03-14-1995 | Poli et al. | |
| | A55* | US-5,399,168 | 03-21-1995 | Wadsworth et al. | |
| | A56* | US-5,417,656 | 05-23-1995 | Ensminger et al. | |
| | A57* | US-5,423,334 | 06-13-1995 | Jordan | |
| | A58* | US-5,453,097 | 09-26-1995 | Paradis | |
| | A59* | US-5,476,451 | 12-19-1995 | Ensminger et al. | |
| | A60* | US-5,520,643 | 05-28-1996 | Ensminger et al. | |
| | A61* | US-5,527,277 | 06-18-1996 | Ensminger et al. | |
| | A62* | US-5,527,278 | 06-18-1993 | Ensminger et al. | |
| | A63* | US-5,531,684 | 07-02-1996 | Ensminger et al. | |
| | A64* | US-5,542,923 | 08-06-1996 | Ensminger et al. | |
| | A65* | US-5,554,117 | 09-10-1996 | Ensminger et al. | |
| | A66* | US-5,556,381 | 09-17-1996 | Ensminger et al. | |
| | A67* | US-5,558,641 | 09-24-1996 | Galntz et al. | |
| | A68* | US-5,562,618 | 10-08-1996 | Cai et al. | |
| | A69* | US-5,607,393 | 03-04-1997 | Ensminger et al. | |
| | A70* | US-5,613,945 | 03-25-1997 | Cai et al. | |
| | A71* | US-5,662,616 | 09-02-1997 | Bousquet | |
| | A72* | US-5,707,357 | 01-13-1998 | Mikhail et al. | |
| | A73* | US-5,741,228 | 04-21-1998 | Lambrecht et al. | |
| | A74* | US-5,755,780 | 05-26-1998 | Finch et al. | |
| | A75* | US-5,792,104 | 08-11-1998 | Speckman et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B9 | WO-94/005351 | 03-17-1994 | | | |
| | B10 | WO-95/016480 | 06-22-1995 | | | |
| | B11 | WO-97/001370 | 01-16-1997 | | | |
| | B12 | WO-97/023255 | 07-03-1997 | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.  * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW.  [1] Applicant's unique citation designation number (optional).  [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3).  [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [6] Applicant is to place a check mark here if English language Translation is attached.

PTO/SB/08b (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | **Complete if Known** | |
|---|---|---|
| Substitute for form 1449/PTO | Application Number | 12/207,205 - Conf. # 1299 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Filing Date | September 9, 2008 |
| | First Named Inventor | Jeff Gray et al. |
| *(Use as many sheets as necessary)* | Art Unit | 3767 |
| | Examiner Name | Bradley G. THOMAS, JR. |
| Sheet 4 of 5 | Attorney Docket Number | 3008069-7061762001 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A76* | US-5,792,123 | 08-11-1998 | Ensminger | |
| | A77* | US-5,797,886 | 08-25-1998 | Roth et al. | |
| | A78* | US-5,814,016 | 09-29-1998 | Valley et al. | |
| | A79* | US-5,848,989 | 12-15-1998 | Villani | |
| | A80* | US-5,879,322 | 03-09-1999 | Lattin et al. | |
| | A81* | US-5,822,341 | 03-16-1999 | Bousquet | |
| | A82* | US-5,897,528 | 04-27-1999 | Schultz | |
| | A83* | US-5,906,596 | 05-25-1999 | Tallarida | |
| | A84* | US-5,911,706 | 06-15-1999 | Estabrook et al. | |
| | A85* | US-5,941,856 | 08-24-1999 | Kovacs et al. | |
| | A86* | US-5,944,688 | 08-31-1999 | Lois | |
| | A87* | US-5,944,698 | 08-31-1999 | Fischer et al. | |
| | A88* | US-5,954,687 | 09-21-1999 | Baudino | |
| | A89* | US-5,954,691 | 09-21-1999 | Prosl | |
| | A90* | US-5,961,497 | 10-05-1999 | Larkin | |
| | A91* | US-5,989,216 | 11-23-1999 | Johnson et al. | |
| | A92* | US-6,056717 | 05-02-2000 | Finch et al. | |
| | A93* | US-6,086,555 | 07-11-2000 | Eliasen et al. | |
| | A94* | US-6,099,508 | 08-08-2000 | Bousquet | |
| | A95* | US-6,152,909 | 11-28-2000 | Bagaoisan et al. | |
| | A96* | US-6,210,366 | 04-03-2001 | Sanfilippo | |
| | A97* | US-6,306,124 | 10-23-2001 | Jones et al. | |
| | A98* | US-6,527,754 | 03-04-2003 | Tallarida et al. | |
| | A99* | US-6,592,571 | 07-15-2003 | Verbeek et al. | |
| | A100* | US-6,610,031 | 08-26-2003 | Chin | |
| | A101* | US-6,726,063 | 04-27-2004 | Stull et al. | |
| | A102* | US-6,962,577 | 11-08-2005 | Tallarida et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B13 | WO-97/026931 | 07-31-1997 | | | |
| | B14 | WO-98/018506 | 08-15-1997 | | | |
| | B15 | WO-00/012171 | 03-09-2000 | | | |
| | B16 | WO-00/016844 | 03-30-2000 | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

PTO/SB/08b (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | **Complete if Known** | |
|---|---|---|
| | Application Number | 12/207,205 - Conf. # 1299 |
| | Filing Date | September 9, 2008 |
| | First Named Inventor | Jeff Gray et al. |
| | Art Unit | 3767 |
| | Examiner Name | Bradley G. THOMAS, JR. |

| Sheet | 5 | of | 5 | Attorney Docket Number | 3008069-7061762001 |
|---|---|---|---|---|---|

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A103* | US-7,033,339 | 04-25-2006 | Lynn | |
| | A104* | US-RE35,601 | 09-02-1997 | Eckenhoff | |
| | A105* | US-20010016717 | 08-23-2001 | Haarala et al. | |
| | A106* | US-20010056266 | 12-27-2001 | Tallarida et al. | |
| | A107* | US-20020121530 | 09-05-2002 | Socier | |
| | A108* | US-20030141477 | 07-31-2003 | Miller | |
| | A109* | US-20040133173 | 07-08-2004 | Edoga et al. | |
| | A110* | US-20040186444 | 09-23-2004 | Daly et al. | |
| | A111* | US-20050010176 | 01-13-2005 | Dikerman et al. | |
| | A112* | US-20050027234 | 02-03-2005 | Waggoner et al. | |
| | A113* | US-20050027261 | 02-03-2005 | Weaver et al. | |
| | A114* | US-20060224129 | 10-05-2006 | Beasley et al. | |
| | A115* | US-20060247584 | 11-02-2006 | Sheetz et al. | |
| | A116* | US-20070078391 | 04-05-2007 | Wortley et al. | |
| | A117* | US-20020013557 | 01-31-2002 | Sherry | |
| | A118* | US-20030109823 | 06-12-2003 | Sherry | |
| | A119* | US-20030216694 | 11-20-2003 | Tollini | |
| | A120* | US-20050080401 | 04-14-2005 | Peavy | |
| | A121* | US-20070100302 | 05-03-2007 | DiCarlo et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B17 | WO-00/033901 | 06-15-2000 | | | |
| | B18 | WO-01/060444 | 08-23-2001 | | | |
| | B19 | WO-03/084832 | 10-16-2003 | | | |
| | B20 | WO-05/068009 | 07-28-2005 | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

A/74410107.1

# Exhibit 10

| **Notice of References Cited** | Application/Control No. 12/246,303 | Applicant(s)/Patent Under Reexamination HANSON ET AL. | |
|---|---|---|---|
| | Examiner Emily Schmidt | Art Unit 3767 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,086,555 A | 07-2000 | Eliasen et al. | 604/93.01 |
| * | B | US-6,120,492 A | 09-2000 | Finch et al. | 604/502 |
| * | C | US-2006/0247584 A1 | 11-2006 | Sheetz et al. | 604/288.02 |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

# Exhibit 11

389772US71INT
Filed on behalf of: Powers
By:   W. Todd Baker, Esq.
      Registration No. 45,265
      OBLON, SPIVAK, McCLELLAND,
      MAIER & NEUSTADT, L.L.P.
      1940 Duke Street
      Alexandria, Virginia 22314
      Direct:  (703) 412-6383
      Tel:  (703) 413-3000
      Fax:  (703) 413-2220
      E-Mail:  CGHOLZ@OBLON.COM

BOX INTERFERENCE

Paper No._____

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES
(Administrative Patent Judge Jameson Lee)

KENNETH M. **ZINN,** RAYMOND BIZUP, KEVIN SANFORD,
AND TIMOTHY M. SCHEWEIKERT
Junior Party,

(Application 11/725,287)

v.

KELLY B. **POWERS**

Senior Party.

(Patent 7,785,302)

_____

Interference No. 105,860 (JL)

**POWERS' REAL PARTY IN INTEREST**

Highly Confidential                                          DELANGIO_00127995

All right, title, and interest in U.S. Patent No. 7,785,302 involved in this interference is

lodged in C.R. Bard, Inc. (assignee).

Respectfully submitted,

5                                             W. Todd Baker /s/

                                            _____

W. Todd Baker
Registration No. 45,265
Lead Attorney for Powers
10                                       OBLON, SPIVAK, McCLELLAND,
                                        MAIER & NEUSTADT, L.L.P.
1940 Duke Street
Alexandria, Virginia 22314
(703) 412-6383 (direct dial)
15                                       (703) 413-2220 (facsimile)
TBAKER@OBLON.COM (e-mail)

Of Counsel:

Charles L. Gholz
20   Registration No. 26,395
OBLON, SPIVAK, McCLELLAND,
  MAIER & NEUSTADT, L.L.P.
1940 Duke Street
Alexandria, Virginia 22314
25   (703) 412-6485 (direct dial)
(703) 413-2220 (facsimile)
CGHOLZ@OBLON.COM (e-mail)

Erik L. Ence
30   Registration No. 42,511
Bard Access Systems, Inc.
605 North 5600 West
Salt Lake City, UT 84116
(801) 522-4985 (direct dial)
35   (801) 522-5151 (facsimile)
ERIK.ENCE@CRBARD.COM (e-mail)

1

**Highly Confidential**

**DELANGIO_00127996**

Certificate of Service

Pursuant to Powers' duty enunciated in S.O. ¶105.3, Applicant's undersigned

Representative certifies that the party Zinn has been duly served with a copy of the forgoing and

5 a copy of this Certificate of Service. The party Zinn has been served in the manner provided by

S.O. ¶.105.3. Specifically, the party Zinn was served by prior to 5:00PM Eastern Time on

November 25, 2011 by posting to the Interference Web Portal.

Respectfully submitted,

10 W. Todd Baker /s/

_____

W. Todd Baker
Registration No. 45,265
Lead Attorney for Powers
15 OBLON, SPIVAK, McCLELLAND,
   MAIER & NEUSTADT, L.L.P.
1940 Duke Street
Alexandria, Virginia 22314
(703) 412-6383 (direct dial)
20 (703) 413-2220 (facsimile)
TBAKER@OBLON.COM (e-mail)

Of Counsel:

25 Charles L. Gholz
Registration No. 26,395
OBLON, SPIVAK, McCLELLAND,
   MAIER & NEUSTADT, L.L.P.
1940 Duke Street
30 Alexandria, Virginia 22314
(703) 412-6485 (direct dial)
(703) 413-2220 (facsimile)
CGHOLZ@OBLON.COM (e-mail)

35 Erik L. Ence
Registration No. 42,511
Bard Access Systems, Inc.
605 North 5600 West
Salt Lake City, UT 84116
40 (801) 522-4985 (direct dial)
(801) 522-5151 (facsimile)
ERIK.ENCE@CRBARD.COM (e-mail)

2

Highly Confidential

DELANGIO_00127997

# Exhibit 12

389772US711NT

Filed on behalf of: Powers
By:    W. Todd Baker, Esq.
       Registration No. 45,265
       OBLON, SPIVAK, McCLELLAND,
       MAIER & NEUSTADT, L.L.P.
       1940 Duke Street
       Alexandria, Virginia 22314
       Direct: (703) 412-6383
       Tel: (703) 413-3000
       Fax: (703) 413-2220
       E-Mail: CGHOLZ@OBLON.COM

BOX INTERFERENCE

Paper No. _____

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES
(Administrative Patent Judge Jameson Lee)

KENNETH M. ZINN, RAYMOND BIZUP, KEVIN SANFORD,
AND TIMOTHY M. SCHEWEIKERT
Junior Party,

(Application 11/725,287)

v.

KELLY B. POWERS

Senior Party,

(Patent 7,785,302)

Interference No. 105,860 (JL)

**POWERS' REAL PARTY IN INTEREST**

# Exhibit 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| C.R. BARD, INC and<br>BARD PERIPHERAL VASCULAR, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ANGIODYNAMICS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 20-1544 (CFC)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' INITIAL DISCLOSURE OF ASSERTED CLAIMS
INFRINGEMENT CONTENTIONS**

Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Plaintiffs" or "Bard") provide the following disclosures pursuant to Paragraph 6 of the Scheduling Order. (D.I. 216).

These infringement contentions are based upon information available to Bard, and Bard's reasonable diligence in reviewing this information, as of the date of these contentions. These initial infringement contentions are not intended to be an exhaustive citation of all evidence, and Bard reserves the right to supplement, modify, or amend the following initial claim charts based on additional documents, information or things, further analysis or subsequent events in the litigation, such as rulings by the Court. Bard also reserves the right to rely on and introduce information in addition to any information provided herein during discovery, at trial, or otherwise.

**Asserted Claims (6(a))** For the reasons set forth in Bard's Amended Complaint (D.I. 68) and the attached claim charts, and based on the information currently available to it, Bard asserts that AngioDynamics infringes at least the following claims ("Asserted Claims"):

1

- U.S. Patent No . 7,785,302  ("the '302 Patent"): Claims 1-10.

- U.S. Patent No.  7,947,022  (the '022 Patent): Claims 1-12, 14, 16, 18-20.

- U.S. Patent No. 7,959,615 ("the '615 Patent"): Claim 8.

This preliminary identification is based on the information presently known to Bard and is given without the benefit of further discovery or any claim construction order by the Court that may issue in this case.  Bard reserves its rights to amend these Asserted Claims as discovery ensues, including based on Bard's review of AngioDynamics's forthcoming document productions and written discovery responses.  If necessary, Bard will amend this list of claims as appropriate, including in its Final Infringement Contentions that are currently due on March 7, 2022 (D.I. 216).

**Accused Instrumentalities (6(b)).**  For all of the Asserted Claims of the '302, '022 and '615 Patents, the accused instrumentalities are those identified below and in Bard's initial infringement charts attached as Exhibits A-C ("Accused Instrumentalities"):

- Smart Port® (including CT, CT low-profile and CT mini ports),

- BioFlo ports with Endexo technology (including plastic single, plastic dual, and titanium single),

- Xcela ports (including standard titanium, low profile titanium, plastic/titanium, plastic and dual lumen plastic) and Xcela Plus ports (including plastic and titanium).

Bard's initial claim charts are based on these product lines, and Bard reserves the right to supplement, modify or amend these initial claim charts to incorporate additional product lines or specific variants within each product line as necessary and appropriate.

Based on currently available information, including discovery provided by Angiodynamics to date, Bard's reference to the Smart Port®, BioFlo, and Xcela Plus systems in its initial charts includes one or more components and any substantially similar products or

components, even if they have different trade names and/or product numbers. Bard reserves the right to identify additional specific products and/or components as necessary and appropriate as discovery progresses.

This preliminary identification is based on the information presently known to Bard and is given without the benefit of further discovery or any claim construction order by the Court that may issue in this case.  Bard reserves its rights to supplement its initial claim charts to include any additional instrumentalities identified through discovery.  If necessary, Bard will provide supplementations, modifications and/or amendments as appropriate, including in its Final Infringement Contentions that are currently due on March 7, 2022 (D.I. 216).  On information and belief and unless otherwise noted, predecessors and previous versions of the Accused Instrumentalities operate in the same or substantially the same way and are also accused for substantially the same reasons as the Accused Instrumentalities identified herein.

**Infringement Claim Charts (6(c)).**  Based on the information presently known to Bard, and without the benefit of forthcoming discovery or any claim construction order by the Court that may issue in this case, attached as Exhibits A-C are Bard's initial infringement claim charts identifying examples of where each limitation of the Asserted Claims of the '302, '022 and '615 Patents are found within AngioDynamics' Accused Instrumentalities.

The citations, annotations and illustrations in the attached initial claim charts constitute exemplary evidence of infringement and are not intended to be exhaustive of the evidence upon which Bard intends to rely.  Furthermore, Bard's claim charts cite exemplary relevant portions of identified documents, even where a document may contain additional disclosure relating to a particular claim element or limitation, and Bard reserves all rights to rely on other portions of the identified documents to support its claims.  Bard eserves the right to supplement, modify, and/or

amend these claim charts based upon information learned through discovery, including Bard's review of AngioDynamics' forthcoming document productions and written discovery responses. If necessary, Bard will provide supplementations, modifications and/or amendments as appropriate, including in its Final Infringement Contentions that are currently due on March 7, 2022 (D.I. 216).

**Direct and Indirect Infringement (6(d)).** For the reasons set forth in Bard's Amended Complaint (D.I. 68) and the attached claim charts, AngioDynamics directly infringes the Asserted Claims under 35 U.S.C. § 271(a).

Bard reserves the right to supplement, modify and/or amend these assertions based upon information learned through discovery, including Bard's review of AngioDynamics' forthcoming document productions and written discovery responses. If necessary, Bard will provide supplementations, modifications and/or amendments as appropriate, including in its Final Infringement Contentions that are currently due on March 7, 2022 (D.I. 216).

**Doctrine of Equivalents (6(e)).** Bard contends that any element not literally found in the Accused Instrumentalities is present under the doctrine of equivalents because the differences, if any, between the claimed inventions and the Accused Instrumentalities are insubstantial and the Accused Instrumentalities perform the same or substantially the same functions, in the same or substantially the same ways, to achieve the same or substantially the same results as such elements.

Bard reserves the right to supplement, modify, and/or amend its infringement theories under the doctrine of equivalents based upon information learned through discovery, including Bard's review of AngioDynamics' forthcoming document productions and written discovery responses. Bard will provide such supplementations, modifications, and/or amendments, if

necessary, as appropriate, including in its Final Infringement Contentions that are currently due on March 7, 2022 (D.I. 216).

**Priority (6(f)).**  Each of the Asserted Claims of the '022 patent, '302 patent and '615 patent is entitled to a priority date of March 4, 2005—the filing date of U.S. Provisional Application No. 60/658,518.  The subject matter described by the Asserted Claims, however, may have been conceived and reduced to practice prior to this priority date.  Bard's investigation is ongoing and Bard reserves the right to assert that the claims are entitled to an invention date that is earlier than the above dates.

**Practicing Products (6(g)).**  Bard contends that that the following products embody the invention claimed in identified claims of the '302 patent and the '022 patent:

- PowerPort ISP™ Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-10, 12, 14);

- PowerPort™ ClearVUE™ isp Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-9);

- PowerPort™ ClearVUE™ Slim Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-9);

- PowerPort™ Duo™ Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-9);

- PowerPort™ duo™ M.R.I™ Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-9);

- PowerPort™ Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-10, 12, 14);

- PowerPort™ isp M.R.I™ Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-9);

- PowerPort™ M.R.I™ Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-9);

- PowerPort™ Slim Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-10, 12, 14);

- PowerPort™ Vue Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-9);

- PowerPort™ Vue M.R.I™ Implantable Port ('302 patent claims 1-10; '022 patent claims 1-3, 5, 6, 8-9).

Bard has marked the above-identified products with the '302 patent and the '022 patent pursuant to the statute. *See* http://bardaccess.com/ip.

**Timing (6(h)).** Timing of first infringement, start of claimed damages and the end of claimed damages   The dates of first infringement for the '302 Patent, the '022 Patent and the '615 Patent are August 31, 2010, May 24, 2011, and June 14, 2011, respectively. The start of claimed damages for the '302 Patent, the '022 Patent and the '615 Patent are August 31, 2010, May 24, 2011, and June 14, 2011, respectively. Alternatively, the start of the claimed damages for the Asserted Patents is January 11, 2012, the date of the filing of the Complaint (D.I. 2).  The end of claimed damages for the Asserted Patents is through the end of this lawsuit.  Bard is entitled to recover at least a reasonable royalty for sales made between the issue date of each asserted patent and the end of this lawsuit, as well as an ongoing reasonable royalty for any post-suit infringement. Bard also intends to seek lost profits for all sales made from July 12, 2017 to present.  Bard is also entitled to recover a reasonable royalty "beginning on the date of

publication of the application" underlying each of the asserted patents pursuant to 35 U.S.C. § 154(d). Bard is also entitled to recover a reasonable royalty "beginning on the date of publication of the application" underlying each of the asserted patents pursuant to 35 U.S.C. § 154(d). Bard's investigation is ongoing and Bard reserves the right to supplement its response.

**Willful Infringement (6(i)).** ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████    ██████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██ ███ ████ ███ █ ███ ██ ███ ████ ████ ███ ████

███████████████████████████████████████████████

██ ██ ██ █████ █████  Yet, AngioDynamics continues its infringement unabated. AngioDynamics did not taken any affirmative steps to avoid infringement, and AngioDynamics has acted and continues to act despite a known risk of infringement. Accordingly, AngioDynamics has and continues to willfully infringe all three asserted patents. Bard's investigation is ongoing and Bard reserves the right to supplement its response.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347

Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com
*Attorneys for Plaintiff*

*Of Counsel:*
Steven C.  Cherny
Lauren Martin
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100

Matthew Traupman
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000

# Exhibit 14

| | |
|---|---|
| **From:** | Anne-Raphaëlle Aubry |
| **Sent:** | Thursday, June 8, 2023 8:34 PM |
| **To:** | Augelli, John; Angio Delaware-External; Moore, David E.; Palapura, Bindu A. |
| **Cc:** | Bard v Angiodynamics - QE team; Blumenfeld, Jack; Egan, Brian P. |
| **Subject:** | C. R. Bard, Inc. v. AngioDynamics, Inc. (C.A. No. 20-1544-CFC) |

Counsel,

We write to memorialize the parties' June 7, 2023 meet and confer.

First, Bard explained that with respect to AngioDynamics' ("Angio") damages production, Angio's proposal with respect to SKU level data from 2021 was insufficient, and the parties appeared to be at an impasse. Angio stated the full scope of what Bard was asking for was unclear with respect to time period. Bard stated that it was seeking information for the period from the filing of the complaint to the present. Angio stated it gave Bard exactly the type of financials and the format of financials Bard wanted in the -218 ("Port II") case when Morrison Foerster was Bard's counsel and that any additional requests beyond what Angio's counsel agreed with Morrison Foerster was unfair.  Angio represented that what Bard was asking for ███████████████████████████████████████████████████████████████████████████
███████████████ Angio represented that ███████████████████████████████████████████ ██████████
████████████████████████████████████ Bard raised that Angio appears █████████████████
████████████████ Angio pointed Bard to the deposition of Bryan McTiernan ███████████████
███████████████████████ Angio's counsel stated █████████████████████████████████████
████████████████████████████████████████████████████████ and that it was unfair
for Bard to renege on a deal made by former counsel. Bard pointed out that it has repeatedly asked for what the "deal" was and Angio's counsel has refused to provide any information regarding the deal other to say ████████████████████
████████  and that it was negotiated over the course of weeks. Bard explained that the Port 2 deal does not govern this litigation.

Bard reiterated that here it is seeking lost profits, so Bard needs the sales data to perform a lost profits analysis.  Angio argued that Bard also pursued lost profits in Port 2.  Bard explained that in fact Port 2 involved a reasonable royalty analysis.  Bard explained that Angio had a duty to preserve its sales data starting when the Complaint was filed and asked for Angio's position on that.  Angio said ████████████████████████████████████████, and Angio clarified it was not admitting that it has the transaction level sales data Bard seeks.  Bard asked Angio to confirm its position that it has complied with the rules even though Angio refuses to access and produce the data.  Bard also noted that in his deposition Mr. McTiernan stated ████████████████████████████████████████████ (e.g. McTiernan Port II Dep. Tr. at 35:2-9). Angio stated it had no idea what Bard was referring to. The parties agreed they were at impasse on sales data.

Bard then turned to the SmartPort+ and asked Angio to confirm it was refusing to produce SmartPort+ documents.  Angio said that the parties should discuss SmartPort+.  Bard asked if Angio is willing to produce SmartPort+

documents.  Angio said it will not produce SmartPort+ documents unless Bard moves to amend its contentions to include Smartport+. Bard stated the parties were at impasse on this point.

Bard then raised the issue of Angio's first knowledge of the asserted patents. Angio stated it would amend its discovery responses.  Bard asked when it would do so.  Angio refused to provide a date.  Angio said it was still conducting an investigation.  Bard asked when that investigation would be finished.  Angio said there was no way to know.  .  Bard indicated again, that this interrogatory has been pending for two years and Bard needs the information – Angio cannot stonewall until the end of fact discovery. Angio would not provide a date certain.  Bard stated the parties were at impasse and Bard would move the Court.

Bard turned to the original reason it requested this meet and confer, Angio's boilerplate response to Bard's RFPs that Angio was willing to meet and confer.  Angio disagreed that Bard requested the meet and confer to discuss Angio's RFP responses.  Angio said that Bard requested the meet and confer to discuss SmartPort+.  Bard disagreed and explained, as stated in the email in which it requested the meet and confer, that Angio responded to every single RFP with a "willing to meet and confer" regarding the scope of the request.  Bard explained that there are some requests that have nothing to do with SmartPort+, so that response is not limited to SmartPort+.  Bard wanted to go through items that were still missing from Angio's productions to understand Angio's objections to producing them. Angio refused.  Bard asked Angio if it had any other objections to the scope of Bard's RFPs besides SmartPort+.  Angio refused to make any "broad statement about RFPs." Bard then suggested that the parties go through the RFPs one by one.  Angio refused.  Bard then raised specific issues in the first few RFPs, including design history files and drawings, and Angio said that Bard was going RFP-by-RFP, and Angio would not do so.  Angio also said that it had produced all of its design history files, and Bard should have known that.  Angio refused to engage in any discussion about its RFP responses.   Angio stated it would amend its RFP responses to remove the statement that it was willing to meet and confer, and that Bard should send an email with items it believes to be missing from Angio's productions.

Bard raised the emails it sent on June 6th identifying documents in Angio's productions that are either unreadable or include blank pages. Angio stated it would look into it but tried to draw a parallel between the issues in Angio's productions with Angio's complaints about Bard's productions. As Bard explained, Angio's complaints, which Bard has been working on addressing, relate to Angio's request for Bard to go beyond what it produced to MedComp in the MedComp cases.  In contrast, Angio's productions simply include deficiencies. Angio took the position that anything produced to MedComp is deemed to be produced to Angio such that Angio can now request additional data. Bard said that that did not make sense.  How could documents be "deemed" produced?  Either they are produced or they are not produced.  If they are produced, then there should not be any dispute.

Angio raised that it believes it is missing expert reports, invalidity contentions and depositions from the MedComp cases.  Angio said that the parties had agreed to a broad cross use including all information from the MedComp cases.  Bard explained, again, that the parties' agreement, as set forth in the protective order, provides that Bard will produce the documents it produced to MedComp to Angio and Smiths.  That is it. Angio continues to attempt to broaden that agreement to include things other than document production, but in fact that is all Bard agreed to do.  Angio continued to disagree that that was the agreement.

Bard noted that it produced the invalidity contentions.  It asked what depositions Angio believes to be missing. Angio said that Bard had not produced the Trerotola deposition and accused Bard of "withholding" it.  Bard checked and confirmed on the meet and confer that it did in fact produce Dr. Trerotola's deposition, as BARD_ANGIO_PORT 1_001695. Bard reiterated, again, that it had produced all of the depositions taken in the MedComp cases, with the exception of depositions of MedComp witnesses.  Angio asked Bard why Bard had not produced deposition transcripts for Medcomp witnesses.  Bard explained that MedComp designated those transcripts confidential, and Bard is bound by the protective order.  Angio accused Bard of improperly withholding those transcripts.  Bard explained that if Angio wants MedComp's witness transcripts it needs to raise the issue with MedComp.  Angio then demanded a demanded a privilege-log style list of all of the depositions taken tine h MedComp cases so Angio could verify what Bard had not produced on confidentiality grounds.  Bard asked for the basis for Angio's request.  Angio did not provide any basis but maintained that if Bard decided not to produce documents in response to an RFP then Bard had to provide a list of documents it did not produce.  Bard asked Angio if was going to do that for all  of Bard's RPFs.  Angio said it was "apples and oranges" and that Bard had withheld Dr. Trerotola's transcript.  Bard reiterated that it had, in fact, produced Dr. Trerotola's transcript.  Bard suggested that Angio review Bard's production before making accusations that Bard is "withholding" documents.

Bard agreed to confirm in an email what deposition transcripts it has not produced based on confidentiality.  Bard has not produced transcripts of MedComp fact witnesses because those transcripts were designated confidential by MedComp's counsel as containing MedComp confidential information.  If Angio wants MedComp's fact witness deposition transcripts it needs to take the issue up with MedComp..

Bard also agreed to send Angio Dr. Trerotola's deposition transcript and exhibits in a sendfile, which is below.

https://sendfile.quinnemanuel.com/pkg?token=89669e24-94c7-4f37-8de5-83145844cd98

Next, Angio asked about the certified file histories and invention disclosure forms. Bard stated it believes the asserted patents certified file histories for the Port 1 case were produced in the MedComp cases. Angio asked for their bates numbers.  Bard said that it did not have Bates numbers handy.

Angio asked for the invention disclosure forms. Bard explained its position that under Federal Circuit precedent such invention disclosure forms are privileged. Angio asked Bard why that privilege wasn't waived despite the invention disclosure form being included in the provisional application to which the asserted patents claim priority. Bard clarified that it is not claiming privilege over that particular invention disclosure form, which is now public, but it maintains privilege over other invention disclosure forms. Bard said that including that invention disclosure form in the provisional does not waive privilege for all other invention disclosure forms.  Angio stated that it believes Bard waived privilege and the parties are at an impasse.

Angio asked Bard about its response to interrogatories No. 4-5, which Angio stated seek the factual bases for Bard's positions related to identification and power injectability and the identification of people with knowledge. Angio stated its position that Bard's response incorporating Bard's claim construction briefing is non-responsive. Bard explained that

the interrogatories are not seeking facts but rather are seeking Bard's interpretation of certain claim terms. Bard explained that its position on the interpretation of those claim terms is in the claim construction briefing that Bard incorporated by reference in its response. Angio stated the parties were at impasse.

Angio next asked Bard about its response to interrogatory No. 13, and asked Bard to clarify its response because Angio believed Bard's response was contrary to a fact that Bard stipulated to in the Port II litigation. Angio pointed Bard to the Port II Trial Tr. at 1066:18-23. Bard explained it is simply stating the port products not designed for power injection were not marketed as such, and there is no inconsistency. Angio indicated it would take this issue up with the Court.

Angio asked Bard about its response to interrogatory No. 9 and asked Bard to explain the statement in its response that "Plaintiffs are not aware of any evidence that Mr. Powers or anyone with a duty of candor were aware of Herts" given that  Herts was part of the PowerPort 510K which Mr. Powers reviewed. In response to Angio's question Bard reminded Angio that Angio has deposed Mr. Powers twice and crossed him at trial twice on this exact issue. And that Mr. Powers was deposed on this issue in the MedComp cases, and Angio has those transcripts. Bard suggested that Angio look at the transcripts. Angio accused Bard of not conducting an investigation as to whether Mr. Powers knew about Herts. Bard reiterated that Mr. Powers already testified about this exact issue, and Angio has not provided any evidence to contract that testimony.  Bard also noted that Angio's ROG is unduly burdensome because it asks Bard to explain why "any other employee[]" of Bard did not submit the requested information to the PTO.  Angio said that Bard's interpretation of the ROG is unreasonable and there is no way to read the ROG as requesting information about "any other employee[]" of Bard.  Bard pointed Angio to the language in the ROG that states "Describe in detail all facts and circumstances related to Bard's (including, but not limited to, Kelly Powers's *or any other employee's*) decision not to submit certain documents and information…"  Angio said that the ROG could be limited to individuals with a duty of candor.  Angio stated the parties were at impasse.

The parties agreed to have local counsel reach out to the Court to initiate the discovery hearing process.

Best,

Anne

# Exhibit 15

| | |
|---|---|
| **From:** | Augelli, John <John.Augelli@cwt.com> |
| **Sent:** | Wednesday, May 31, 2023 9:52 PM |
| **To:** | Lauren Martin; Angio Delaware-External; 'Moore, David E.'; 'Palapura, Bindu A.' |
| **Cc:** | Bard v Angiodynamics - QE team; 'Blumenfeld, Jack'; 'Egan, Brian P.' |
| **Subject:** | RE: C. R. Bard, Inc. v. AngioDynamics, Inc. (C.A. No. 20-1544-CFC) |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**[EXTERNAL EMAIL from john.augelli@cwt.com]**

Counsel,

As we have stated repeatedly, Angio ███████████████████████████████████████████
████████     Bard's request for detailed sales data (beyond what was agreed to in the -218 case) has no temporal limit; it is unreasonable and unduly burdensome for at least that reason. Angio will represent the same to the Court.

As for supposed inconsistencies, we are unsure what Bard is talking about. Vaguely saying "inconsistencies" exist—without providing any details—does not satisfy Bard's meet-and-confer requirements. While we are happy to look into the issue (please provide specifics supporting Bard's argument that Angio's recent productions have inconsistencies), we note the following:

1. Bard and Angio agreed on a set procedure for producing sales information in the -218 case.
2. By agreement, all discovery from that case is deemed produced here. The parties did so, with the Court's approval, so that the same information would not have to be produced twice.
3. In the -218 case, Bard deposed Angio's the custodian of Angio's financial information and had the opportunity to raise any issues with Angio's production. Bard didn't, including for the sales data (produced six years ago) about FY2014.
4. All of Angio's sales information, including "recent" information, was reviewed and vetted by Dr. Cox, who has a Ph.D. in economics, and his team of analysts at NERA. To the extent he or his team identified any issues, they should have been raised previously. None were, and Bard relied on this data at the November 2022 trial.

Thus, the parties are not an impasse, and Angio does not find Bard's arguments compelling. Nevertheless, in an attempt to avoid burdening the Court with motion practice, Angio is willing to produce SKU-level data dating back to FY 2021. Please let us know if Bard agrees.

Regards,

**John T. Augelli**
*Associate*
Cadwalader, Wickersham & Taft LLP
200 Liberty Street, New York, NY 10281
Tel: +1 (212) 504-6136 | Fax: +1 (212) 504-6666
john.augelli@cwt.com | www.cadwalader.com

**From:** Lauren Martin <laurenmartin@quinnemanuel.com>
**Sent:** Friday, May 26, 2023 7:35 PM
**To:** Angio Delaware-External <Angio-Delaware.External@cwt.com>; 'Moore, David E.' <dmoore@potteranderson.com>; 'Palapura, Bindu A.' <bpalapura@potteranderson.com>
**Cc:** Bard v Angiodynamics - QE team <bardvangiodynamics-qeteam@quinnemanuel.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>; 'Egan, Brian P.' <began@morrisnichols.com>
**Subject:** C. R. Bard, Inc. v. AngioDynamics, Inc. (C.A. No. 20-1544-CFC)

> **Caution:** This email originated from outside of CWT. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel:

You represented on the on the meet and confer that ▊▊▊▊▊▊▊▊▊ is unduly burdensome to produce because it is not maintained in a database such that a report can be readily generated with that data.  However, based on public information (https://www.triniti.com/oracle-demand-management-cloud-implementation and https://www.dcs-is-edi.com/2017/01/dcs-helps-medical-devices-company-connect-to-canada/) and Angio's own document production, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ Accordingly, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ In view of this, please let us know by May 31st whether Angio maintains its position that ▊▊▊▊▊▊▊▊▊▊▊ is unduly burdensome.  If so, we will contact the Court to request a discovery conference.

Best,

**Lauren Martin**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

111 Huntington Ave Suite 520
Boston, MA 02199
617-712-7105 Direct
617.712.7100 Main Office Number
617.712.7200 FAX
laurenmartin@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

NOTE: The information in this email is confidential and may be legally privileged.  If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy.  Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way from its use.

# Exhibit 16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

C.R. BARD, INC. and ) 
BARD PERIPHERAL VASCULAR, INC., )
                                              )
                Plaintiffs, )
                                              )    C.A. No. 20-1544 (CFC)
                v. )
                                              )
ANGIODYNAMICS, INC., )
                                              )
                Defendant. )
                                              )
                                              )

## ANGIODYNAMICS, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO BARD'S FIRST SET OF JOINT INTERROGATORIES (NOS. 1-6)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the agreed case schedule, Defendant and Counterclaim-Plaintiff AngioDynamics Inc. ("AngioDynamics") responds and objects to C. R. Bard Inc. and Bard Peripheral Vascular, Inc.'s ("Bard's") First Set of Joint Interrogatories, served May 21, 2021. Preceding AngioDynamics's responses and specific objections below, AngioDynamics provides its General Objections applicable to each of its responses. Each of AngioDynamics's responses is subject to and without waiver of its general and specific objections below.

### A.    GENERAL OBJECTIONS

1.    AngioDynamics objects to each and every Interrogatory to the extent it seeks information and/or imposes a duty on AngioDynamics that is not proportional to the needs of the instant litigation.

2.    AngioDynamics objects to each and every Interrogatory to the extent it seeks information unrelated to the Accused Products identified by Bard in its Initial Disclosures Under

Fed. R. Civ. P. 26(a)(1), its Infringement Contentions, and Delaware Default Standard for Discovery Paragraphs 3 and 4(a), served March 30, 2021.

3.       AngioDynamics responds to these Interrogatories based on the information currently available to it. Given that both discovery and AngioDynamics own investigation in this action are ongoing, AngioDynamics reserves the right at any time to supplement, correct, amend, or clarify any of the responses herein set forth.

4.       AngioDynamics objects to each and every definition, instruction, and/or Interrogatory to the extent that it purports to impose duties or obligations upon AngioDynamics in excess of or different from the duties and obligations imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of this Court, any applicable orders of this Court—including but not limited to the Court's Scheduling Order— any stipulation or agreement of the parties, or other applicable law.

5.       AngioDynamics objects to each and every definition, instruction, and/or Interrogatory as overly broad, not described with reasonable particularity, and unduly burdensome to the extent that it seeks, individually or collectively, information not proportional to the claims and defenses in the instant litigation.

6.       AngioDynamics objects to each and every definition, instruction, and/or Interrogatory to the extent that it purports to require the production or disclosure of any privileged communication or attorney work product or any other applicable privilege, protection or doctrine. If supplying any of the requested information would result in waiving any applicable privilege or objection based on any such privilege, AngioDynamics objects to providing such information. Nothing contained herein is intended to be or should be construed as a waiver of the attorney-client privilege, the attorney work-product doctrine, the common interest and/or joint defense privilege,

the rights set forth in Fed. R. Civ. 26(b)(5)(B), or any other applicable privilege, protection or doctrine.

7.      AngioDynamics objects to each Interrogatory to the extent that it attempts to elicit information containing the impressions, conclusions, opinions, legal research or theories of attorneys of AngioDynamics, or attempts to seek materials prepared in anticipation of litigation.

8.      AngioDynamics objects to each Interrogatory to the extent that it attempts to seek disclosure of information protected by the rights of privacy of AngioDynamics, AngioDynamics employees, or third party non-litigants.

9.      AngioDynamics objects to each Interrogatory to the extent that it seeks to elicit information that comprises third-party proprietary information, trade secrets or other confidential commercial information that AngioDynamics is obligated not to disclose. AngioDynamics will provide such information only after any necessary consent has been obtained from any such third party.

10.     AngioDynamics objects to each Interrogatory to the extent that it calls for information that is not within AngioDynamics's knowledge, or to the extent that it calls for information that is not within AngioDynamics's possession, custody, or control. AngioDynamics also objects to each Interrogatory to the extent that it seeks information already in Bard's possession, custody or control, or available to Bard from public sources.

11.     For all information provided, AngioDynamics reserves its right to interpose at trial all objections to competence, authenticity, relevance, materiality, propriety, admissibility and any and all other objections that would exclude the information from evidence.

12.     AngioDynamics objects to each Interrogatory to the extent that it seeks information that is properly the subject of expert testimony. To the extent that any Interrogatory conflicts with the Court's Scheduling Order, any other applicable statute, rule, or order, and/or any agreement between the parties, AngioDynamics will follow the dates established in the Court's Scheduling Order, such other applicable statute, rule, or order, and/or such agreement between the parties.

13.     AngioDynamics objects to each Interrogatory to the extent that it is vague, ambiguous, unduly broad in scope, uncertain as to time, unduly burdensome, or oppressive.

14.     AngioDynamics objects to each Interrogatory to the extent that it is compound, phrased disjunctively or conjunctively, and/or includes multiple subparts in such a manner that it is unduly burdensome, confusing, cannot be reasonably answered, or is in violation of Federal Rule of Civil Procedure 33(a).

15.     AngioDynamics objects to Bard's Definitions and Instructions to the extent that they seek information not currently in AngioDynamics's possession, custody or control, on the grounds that any such definition or instruction seeks to require more of AngioDynamics than its obligations under the applicable law, is overly broad, subjects AngioDynamics to unreasonable and undue annoyance, oppression, burden and/or expense or imposes upon AngioDynamics an obligation to investigate information or materials from third parties or services that are equally accessible to Bard.

16.     AngioDynamics objects to Bard's use of the terms "or," "and," "all," "any," "each," "every," "one or more," and "including" as being overly broad and unduly burdensome to the extent that they seek information cumulative of each other.

17.     AngioDynamics objects to each and every definition, instruction, and/or Interrogatory to the extent that it purports to require AngioDynamics to produce documents, things, or information on behalf of any other entity. AngioDynamics will only respond on behalf of AngioDynamics, Inc.

18.     AngioDynamics objects to Bard's vague use of the terms "describe," "discuss," "concern," and "concerning" because the definitions are overly broad, vague, ambiguous, harassing, and unduly burdensome, and cause the Interrogatories incorporating those terms to exceed the scope of AngioDynamics's duty to respond to these Interrogatories pursuant to the Federal Rules of Civil Procedure and the applicable rules and orders of this Court.

19.     AngioDynamics objects to the definition of "document" to the extent that the definition would require discovery beyond the scope of the requirements contained in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or the relevant statutory or case law. AngioDynamics also objects to Bard's definitions and instructions to the extent that they seek to impose obligations to search for, collect, produce, or analyze electronically stored information beyond that which is required by the Court's Scheduling Order and Delaware's Default Standard for Discovery.

20.     To the extent any opinions may exist, these opinions and any information or documents relating thereto, including information relating to individuals with knowledge of any opinion, are privileged and confidential and will not be produced or listed on a privilege log until such time as AngioDynamics elects to rely on any such opinions in accordance with the March 23, 2021 Scheduling Order.

B.     **OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 1.**

Identify the operative 510(k) clearance, design drawings and manufacturing specifications for each of Your Accused Products.

**RESPONSE:**

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as vague and ambiguous to the extent it refers to the "operative" 510(k) clearance, design drawings and manufacturing specifications. Regulatory filings, drawings, and specifications may change over time, and it is unclear the time period for which Bard is requesting "operative" documents. AngioDynamics further objects to this Interrogatory as impermissibly containing multiple subparts. To the extent that the inclusion of these subparts as separate Interrogatories increases the total number of Interrogatories above the Court's prescribed limit, AngioDynamics objects to the Interrogatories as exceeding the permitted number. AngioDynamics further objects to this Interrogatory as overly broad and not proportional to the needs of the case to the extent it seeks information not relevant to any claim or defense in this case, including specific details relating to any regulatory clearance.

Subject to and without waiving the foregoing general and specific objections, AngioDynamics identifies the following based on its current investigation: DELANGIO_00002295-2498;     DELANGIO_00004812-846;     DELANGIO_00026565-6578; DELANGIO_00026777-780;     DELANGIO_00000855-1214;     DELANGIO_00000890-97; DELANGIO_00026394-537;     DELANGIO_00026019-203;     DELANGIO_00001979-2014; DELANGIO_00000148-271;     DELANGIO_00000158;     DELANGIO_00000272-422; DELANGIO_00026538-6776;     DELANGIO_00001215-1375;     DELANGIO_00026538-6776; DELANGIO_00000599-854;     DELANGIO_00000832-34;     DELANGIO_00001474-1514;

-6-

DELANGIO_00026204-6379;       DELANGIO_00026781-917;       DELANGIO_00026918-24;

DELANGIO_00026781-917;       DELANGIO_00012269-283;       DELANGIO_00073308-390;

DELANGIO_00073138-183;       DELANGIO_00072873-930;       DELANGIO_00092871-940;

DELANGIO_00073308-390;       DELANGIO_00072873-930;       DELANGIO_00073138-183;

DELANGIO_00073308-390;       DELANGIO_00092871-940;       DELANGIO_000186851;

DELANGIO_00264239242;       DELANGIO_00011197-298;       DELANGIO_00091889-919;

DELANGIO_00111191-256; DELANGIO_00208777-821 at 780; DELANGIO_00452360-388;

DELANGIO_00011197-298;       DELANGIO_00200714-952;       DELANGIO_00200030-420;

DELANGIO_00068955.

Discovery has just begun, and AngioDynamics reserves the right to update its interrogatory response when and if appropriate as discovery progresses.

## INTERROGATORY NO. 2.

To the extent You contend that any of Your Accused Products do not infringe the Asserted Claims, state the basis for Your contention, including identifying each claim element that is allegedly not infringed and the reason You contend that element is not infringed.

## INITIAL RESPONSE (JUNE 21, 2021):

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as calling for information subject to the attorney-client privilege and/or work-product privilege. AngioDynamics further objects to this Interrogatory to the extent it calls for information that is properly the subject of expert reports; such information shall be disclosed as required by the Federal Rules of Civil Procedure and the Court's Scheduling Order. AngioDynamics further objects to this Interrogatory to the extent it seeks to shift the burden of proof as to infringement to AngioDynamics instead of to Bard. AngioDynamics further objects to

this Interrogatory as impermissibly containing multiple subparts. To the extent that inclusion of these subparts as separate Interrogatories increases the total number of Interrogatories above the Court's prescribed limit, AngioDynamics objects to the Interrogatories as exceeding the permitted number. AngioDynamics notes that discovery remains ongoing, and that the Court has not issued any decision construing the meanings of claim terms. AngioDynamics reserves the right to amend its response as necessary and appropriate.

AngioDynamics further objects to this Interrogatory as impermissibly vague and unduly burdensome because Bard has failed to sufficiently place AngioDynamics on notice as to Bard's theories of infringement, including because Bard's infringement contentions are impermissibly vague and ambiguous, and fail to adequately identify the specific features and characteristics of the accused products that are allegedly infringing.  Moreover, Bard's Infringement Contentions merely parrot claim language or the elements of a theory of infringement without providing actual detail as to how such claim language or elements are actually satisfied by the accused products. AngioDynamics' response is therefore limited to its present understanding of the specific theories identified in Bard's Infringement Contentions.

Subject to and without waiving the foregoing general and specific objections, AngioDynamics responds as follows: ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

AngioDynamics' investigation is ongoing, and discovery has not yet begun in earnest. AngioDynamics will continue to update this Interrogatory response as required by the Federal Rules of Civil Procedure as its investigation continues.

**SUPPLEMENTAL RESPONSE (JULY 7, 2023):**

Subject to and without waiving the foregoing general and specific objections, AngioDynamics amends and supplements its response as follows:

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

AngioDynamics' investigation is ongoing, and discovery has not yet begun in earnest. AngioDynamics will continue to update this Interrogatory response as required by the Federal Rules of Civil Procedure as its investigation continues.

**INTERROGATORY NO. 3.**

For each of Your Accused Products, separately state the basis for any contention that any infringement has not been willful, including in Your answer a detailed explanation of when and how You first became aware of each Bard Patent-in-Suit and why You did not/do not have the requisite intent to willfully infringe.

**INITIAL RESPONSE (JUNE 21, 2021):**

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as calling for information subject to the attorney-client privilege and/or work-product privilege. AngioDynamics further objects to this Interrogatory to the extent it calls for information that is properly the subject of expert reports; such information shall be disclosed as required by the Federal Rules of Civil Procedure and the Court's Scheduling Order. AngioDynamics further objects to this Interrogatory to the extent it seeks to shift the burden of proof as to infringement to AngioDynamics instead of to Bard.  AngioDynamics further objects to this Interrogatory as impermissibly containing multiple subparts. To the extent that the inclusion of these subparts as separate Interrogatories increases the total number of Interrogatories above the

Court's prescribed limit, AngioDynamics objects to the Interrogatories as exceeding the permitted number. AngioDynamics notes that discovery remains ongoing, and that the Court has not issued any decision construing the meanings of claim terms. AngioDynamics reserves the right to amend its response as necessary and appropriate.

AngioDynamics further objects to this Interrogatory to the extent it is cumulative of other discovery requests. AngioDynamics further objects to this interrogatory as seeking privileged information. As per the schedule, the deadline for disclosing opinions of counsel, if any, will occur later in the case. Additionally, each of the asserted patents are invalid, unenforceable, and not infringed. As a result, there can be no willful infringement. Upon information and belief, AngioDynamics became aware of the Asserted Patents as of the filing date of the original complaint.

███████████████████████████████████████████████████

████████████████████████████████████

**SUPPLEMENTAL RESPONSE (JULY 7, 2023):**

AngioDynamics reincorporates its prior objections and response to this Interrogatory, and again objects to this Interrogatory as calling for information subject to the attorney-client privilege and/or work-product privilege.

Based on its investigation to date, which is still ongoing, ██████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████

**INTERROGATORY NO. 4.**

Identify every sale of each of Your Accused Products on a transaction by transaction basis from launch until present, including the seller and its location, the customer to which the sale was made and its location, the number of units of each SKU sold, the price per unit, the total sale amount, and the date of sale.

**RESPONSE:**

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as ambiguous, overly broad, and not proportional to the needs of the case to the extent is calls for "every sale" of the Accused Products, including identifying specific details about each and every sale. AngioDynamics further objects to this Interrogatory to the extent it calls for information subject to the attorney-client privilege and/or work-product privilege. AngioDynamics further objects to this Interrogatory to the extent it calls for information that is properly the subject of expert reports; such information shall be disclosed as required by the Federal Rules of Civil Procedure and the Court's Scheduling Order.

-15-

Subject to and without waiving the foregoing general and specific objections, AngioDynamics responds as follows: AngioDynamics objects to this interrogatory as seeking information that is disproportionate to the needs of the case and not kept by AngioDynamics in the ordinary course of business. AngioDynamics further objects to this information as seeking the production of sales information in a manner inconsistent with the agreed procedures of the -218 case. AngioDynamics is willing to meet-and-confer with Bard to discuss what, if any, additional sales discovery is needed beyond the extensive discovery that was already provided in the -218 case.

**INTERROGATORY NO. 5.**

Explain when and how You first became aware of each of the following published patent applications, including the earliest date on which You learned of each and the individuals involved: US 2006/0247584, US 2009/0204072, US 2008/0140025 and US 2010/0211026.

**INITIAL RESPONSE (JUNE 21, 2021):**

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as ambiguous, overly broad, and unduly burdensome to the extent it seeks to have AngioDynamics identify "individuals involved" with various patent applications, which may refer to prosecutors, named inventors, unnamed inventors, and other individuals Bard may or may not have disclosed on any official paperwork. AngioDynamics may still not be aware of the actual "individuals involved" with each application, and will update its Response to the extent it discovers unnamed inventors or other unnamed "individuals involved" with such applications. AngioDynamics further objects to this Interrogatory to the extent it seeks information not proportional to the needs of the case, in that awareness of a patent application may be distinguished from awareness of an issued patent.

Subject to and without waiving the foregoing general and specific objections, AngioDynamics responds as follows: AngioDynamics objects to this interrogatory as seeking privileged information and/or information that does not exist in the ordinary course of business.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

## SUPPLEMENTAL RESPONSE (JULY 7, 2023):

AngioDynamics reincorporates its prior objections and response to this Interrogatory, and again objects to this Interrogatory as seeking privileged information, information that does not exist in the ordinary course of business, and/or information about a patent not asserted in this case.

Based on its investigation to date, which is still ongoing, ██████████████████████

███████████████████████████████████████████████████

██████████████████████ Discovery is ongoing, and AngioDynamics reserves the right to amend its response as and when appropriate.

## INTERROGATORY NO. 6.

For each of the Bard Patents-In-Suit, identify and describe in detail each alleged noninfringing alternative that You contend can be used as an alternative to the invention(s) disclosed in each of the Bard Patents-In-Suit, including but not limited to: a description of each alleged non-infringing alternative; a description of when and how each alleged non-infringing alternative was developed; the identity of individuals involved in developing and/or most knowledgeable about each alleged non-infringing alternative (if applicable); dates when each alleged non-infringing alternative was incorporated in an Accused Product (if applicable); costs

associated with developing and implementing each alleged non-infringing alternative; and steps and the time required to develop and implement each alleged noninfringing alternative.

**RESPONSE:**

In addition to and without limiting its General Statements and Objections, AngioDynamics objects to this Interrogatory as premature to the extent it seeks information protected by the attorney-client, work product, or other applicable privilege. AngioDynamics further objects to this Interrogatory to the extent it seeks information responsive to information Bard has not yet provided – Bard has not yet completed its production of relevant documents, and has not adequately provided its theories of infringement, rendering AngioDynamics unable to fully respond to such missing allegations or identify non-infringing alternatives. AngioDynamics further objects to this Interrogatory to the extent it calls for ambiguous, overly broad, and unduly burdensome to the extent it seeks to have AngioDynamics identify "individuals involved in developing and/or most knowledgeable about each alleged non-infringing alternative," which may refer to an unknown number of people, including individuals outside the control of AngioDynamics. AngioDynamics further objects to this Interrogatory to the extent it seeks information that is properly the subject of expert testimony, which will be produced during the time periods provided for in the Scheduling Order. AngioDynamics further objects to this Interrogatory to the extent that it calls for information from another entity, including Bard or a third party, and including any prior art devices manufactured and/or sold by Bard or a third party.

Subject to and without waiving the foregoing general and specific objections, AngioDynamics responds as follows:  this Interrogatory appears to seek expert testimony; expert discovery has not yet begun in this case.

-18-

Discovery has only just begun, and AngioDynamics reserves the right to update its response to this Interrogatory as and when appropriate.

OF COUNSEL:
John T. Moehringer
Danielle V. Tully
Michael B. Powell
CADWALADER, WICKERSHAM &
  TAFT LLP
200 Liberty Street
New York, NY 10281
(212) 504-6000

Dated: July 7, 2023

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
     David E. Moore (#3983)
     Bindu A. Palapura (#5370)
     Andrew L. Brown (#6766)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19801
     Tel:  (302) 984-6000
     dmoore@potteranderson.com
     bpalapura@potteranderson.com
     abrown@potteranderson.com

*Attorneys for Defendant AngioDynamics, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendant and Counterclaim-Plaintiff AngioDynamics, Inc.'s Supplemental Responses and Objections to Bard's First Set of Joint Interrogatories (Nos. 1-6) was served upon the following individuals by electronic mail on July 7, 2023 to the following addresses:

Bryon Benevento
  benevento.bryon@dorsey.com

Kimberly Neville
  neville.kimberly@dorsey.com

Brian Egan
  began@morrisnichols.com

Jack Blumenfeld
  jblumenfeld@morrisnichols.com

Matthew Traupman
  matthewtraupman@quinnemanuel.com

Steven Cherny
  stevencherny@quinnemanuel.com

Lauren Martin
  laurenmartin@quinnemanuel.com

*/s/ Nicholas A. Ritzmann*
Nicholas A. Ritzmann

# Exhibit 17

1

```
 1        IN THE UNITED STATES DISTRICT COURT
 2        IN AND FOR THE DISTRICT OF DELAWARE
 3
          CR BARD INC. et al.,        )
 4        --------------------Plaintiffs.)
 5                     vs.            )Case No.
                                     )15-218-JFB-SRF
 6        ANGIODYNAMICS INC.,         )
                                     )
 7        --------------------Defendant. ) Volume I
 8
 9            TRANSCRIPT OF JURY TRIAL
10
11        JURY TRIAL had before the Honorable
12   Joseph F. Bataillon, U.S.D.J., and a jury of
13   eight on the 14th day of November, 2022.
14
15                 APPEARANCES
16   MORRIS, NICHOLS, ARSHT & TUNNELL LLP
        BY:  JACK BLUMENFELD, ESQ.
17               -and-
18
     QUINN EMANUEL
19       BY:  STEVEN CHERNY, ESQ.
             MATTHEW TRAUPMAN, ESQ.
20           JODIE CHENG, ESQ.
             LAUREN MARTIN, ESQ.
21           JARED NEWTON, ESQ.
22                      Counsel for Plaintiff
23
24
25
```

2

```
 1   (Appearances continued.)
 2
 3   POTTER ANDERSON & CORROON LLP
        BY:  DAVID MOORE, ESQ.
 4               -and-
 5   CADWALADER WICKERSHAM & TAFT
        BY:  JOHN MOEHRINGER, ESQ.
 6           DANIELLE TULLY, ESQ.
             MICHAEL POWELL, ESQ.
 7                  Counsel for Defendant
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

```
 1            THE COURT:  So this is the case of
 2   Bard versus AngioDynamics.  Case Number
 3   15-CV-228.  If the attorneys would please
 4   introduce themselves for the record, first for
 5   the plaintiff.
 6            MR. BLUMENFELD:  Good morning, Your
 7   Honor.  I don't know if you want me to come up.
 8            THE COURT:  Not for this.
 9            MR. BLUMENFELD:  Jack Blumenfeld from
10   Morris, Nichols, and with me from Quinn
11   Emanuel, Steven Cherney, Jodie Cheng, and
12   Matthew Traupman.  In the back of the courtroom
13   are Dylan Raife and Scott Rittman, who is
14   in-house counsel.
15            MR. MOORE:  Good morning, Your Honor.
16   David Moore from Potter Anderson on behalf of
17   AngioDynamics.  I'm joined today by John
18   Moehringer, Danielle Tully, and Michael Powell
19   from the Cadwalader firm.  And also for
20   AngioDynamics, in-house counsel Peter Flora is
21   here.
22            THE COURT:  So we have an issue,
23   first off, with one of the witnesses.  So who
24   wants to address that first?
25            MR. POWELL:  I'll address that, Your
```

4

```
 1   Honor.
 2            THE COURT:  All right.
 3            MR. POWELL:  I'm Mike Powell, and
 4   it's good to see you again.  The issue is our
 5   damages expert, Christopher Bakewell,
 6   contracted COVID last week.  And although we
 7   are hopeful that he's going to get better soon
 8   and we think he will, there's no certainty at
 9   this particular point that he will be testing
10   negative, let alone be well enough to prepare,
11   testify, and be in the courtroom for Dr. Cox's
12   testimony, who is Bard's expert.
13            THE COURT:  When is Dr. Cox expected
14   to testify?
15            MR. POWELL:  We don't know exactly.
16   So we've conceived two possible solutions, and
17   we are agnostic as to either one.  The first
18   solution would be to bifurcate damages from
19   this trial and pick up damages at a later date
20   when it is necessary.  We think that would
21   provide the most certainty here and could be
22   one possible solution.  The other solution
23   would be to have both damages experts testify
24   next week, or at least scheduled -- be
25   scheduled to testify next week.  That would
```

928

1 Q. Good morning.

2 Q. Good morning.

3 Q. Ms. King, would you please state your full name

4 for the record.

10:59AM 5 A. Tina M. Bard-King.

6 Q. Where do you reside, Ms. King?

7 A. New York.

8 Q. In the city?

9 A. No, I do not.  In Hague, New York.

10:59AM 10 Q. Where is your place of employment?

11 A. Latham, New York.

12 Q. What is your position currently?

13 A. My position is director of intellectual

14 property.

11:00AM 15 Q. Ms. King, are you an attorney?

16 A. No, I'm not.

17 Q. Do you understand that you're here today to

18 testify on behalf of AngioDynamics with respect

19 to certain categories of information?

11:00AM 20 A. That is correct.

21 Q. I placed before you a patent application

22 publication U.S. 2007/0078391 A1, dated

23 April 5, 2007, entitled "Implantable Medical

24 Device."  Are you familiar with this

11:00AM 25 application?

929

1 A. Yes.

2 Q. Do you understand that this application was

3 assigned to AngioDynamics?

4 A. The assignee on the face is AngioDynamics, yes.

11:01AM 5 Q. Do you understand that this was an application

6 purchased from Medron?

7 A. Yes.  Wait.  I am not sure whether the

8 provisional application, just to be clear, or

9 -- was purchased or whether we purchased the

11:01AM 10 utility application.

11 Q. Okay.  I placed before you a document entitled

12 Asset Purchase Agreement and marked as

13 Exhibit 13, and its Bates number pages are

14 DELANGIO_00535431 through 535452.  Are you

11:01AM 15 familiar with this?

16 A. Yes, I am.

17 Q. And what is this?

18 A. This is an asset purchase agreement between

19 AngioDynamics and Medron.

11:02AM 20 Q. And what is this?

21 A. We would have purchased the provisional patent

22 application through this asset purchase

23 agreement.

24 Q. And what do you understand that this

11:02AM 25 provisional application covered?

930

1 A. I don't have the application in front of me,

2 but I would assume it would have covered a

3 medical device suitable for subcutaneous

4 implantation having a housing reservoir and

11:02AM 5 septum positioned within and supported by the

6 embodiment of at least one light-emitting

7 element placed in position defining relation to

8 the septum and a pressure-activated,

9 light-activating circuitry associated with the

11:03AM 10 at least one light-emitting element.

11 Q. Was there ever a patent that was issued in

12 connection with the provisional application?

13 A. Not that I'm aware of.

14 Q. Are you aware of whether AngioDynamics has ever

11:03AM 15 commercialized a port product with a

16 light-emitting element?

17 A. I'm not aware of any commercialized Angio port

18 product containing an LED function.

19 Q. Do you recall why it did not go forward to a

11:03AM 20 commercial product?

21 A. I can answer as myself.  This thing was too

22 big.  I'm sorry.  That's me.  That's not Angio.

23 You had to squash a little battery in there.

24 It's big.

11:04AM 25 Q. Let me show you what's been marked as

931

1 Exhibit 15.  It's a letter.

2 A. Thank you.

3 Q. This is a letter dated August 11, 2011, from

4 Steven Trowbridge to Mr. Ronald Wortley.  Are

11:04AM 5 you familiar with this?

6 A. Yes.

7 Q. What did this concern?

8 A. This concerned U.S. Application 11,536,366 --

9 I'm sorry -- 363, "Implantable Medical Device."

11:05AM 10 Q. This refers to Exhibit 13's application; is

11 that right?

12 A. Yes, that is -- the serial number referenced in

13 the letter of Exhibit 15 is the same as the

14 serial number listed for Exhibit 12, the

11:05AM 15 utility patent application.

16 Q. Why did AngioDynamics decide not to pursue

17 further development of the light-emitting

18 product?

19 A. Because, according to this letter, it is not

11:05AM 20 commercially feasible, and this project will

21 not be pursued.

22 Q. Did AngioDynamics pay approximately five and a

23 half million for the Medron technology on the

24 light-emitting element?

11:06AM 25 A. I know that Angio would have paid 500,000 as of

932

1    the effective date of the agreement in
2    Exhibit 13.  As far as I know, we would have
3    paid the 1.5 mill upon the execution of the
4    ANSII agreement for that additional patent
5    application.  As far as I know, we would have
6    paid 3.5 mill to Medron two years after the
7    execution of the agreement, which was -- so
8    it's sometime in 2008.  Would you like me to
9    add those numbers up?
10   Q.  Well, does that add to 5.5 million?
11   A.  I don't know.  So we've got -- it adds to -- if
12       you take A from the agreement, B from the
13       agreement, and C from the agreement, then the
14       total five point -- 5.5 million.
15   Q.  Did AngioDynamics receive opinions from counsel
16       with respect to its port products?
17   A.  We received opinions of counsel regarding
18       specific patents.
19   Q.  And those patents were Bard patents; is that
20       correct?
21   A.  In some cases, yes.
22   Q.  I placed before you what I've marked as
23       Exhibit 28, which is a letter, I believe, dated
24       October 1, 2013, from Scott Bluni to Steven
25       Trowbridge.  Are you familiar with this?

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

933

1    A.  Yes, I am.
2    Q.  First off, can you, again, please describe who
3        Mr. Trowbridge is.
4    A.  Mr. Trowbridge is my direct supervisor.
5    Q.  Is Mr. Trowbridge an attorney?
6    A.  Yes, he is.
7    Q.  At the time this opinion was provided in 2013,
8        were you provided a copy of it?
9    A.  Yes, I would have been provided a copy of it.
10   Q.  Did you review it at that time?
11   A.  I don't recall when I would have reviewed it.
12   Q.  Okay.  Back in 2013, do you know of anybody at
13       AngioDynamics that reviewed this opinion?
14   A.  I do not personally recall, but I probably
15       reviewed it.
16   Q.  Do you know of anybody else?
17   A.  No, I'm not aware of anybody.
18   Q.  Sure.  Are you aware of anybody at
19       AngioDynamics that, based on this opinion, gave
20       the go-ahead to continue manufacture of
21       SmartPorts?
22   A.  No.
23   Q.  Now, do you understand this opinion is an
24       opinion of invalidity of the '460 patent?
25   A.  This opinion is the invalidity opinion of the

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

934

1    '460.  Yes, I'm aware of that.
2    Q.  There's a reference on the first page, second
3        paragraph, after "Dear Steven, consistent with
4        the oral opinion that we provided to you in
5        May 2013."  Are you aware of that oral opinion?
6    A.  Yes.
7    Q.  To whom was that oral opinion delivered?
8    A.  It was actually delivered to me.
9    Q.  I have placed before you what I've marked as
10       Exhibits 29 and 30.
11   A.  Okay.
12   Q.  Exhibit 29 is the '460 patent.
13   A.  Correct.
14   Q.  And Exhibit 30 --
15   A.  Got it.
16   Q.  -- is the '898 application.
17   A.  Tangled up here.  Okay.  Now that I'm grounded,
18       what was your question?
19   Q.  When did you first become aware of the '898
20       application, which is Exhibit 30?
21   A.  It would have been sometime between the
22       publication date, which is November 23, 2006,
23       and the -- and May 2013.
24   Q.  So you could have learned of this shortly after
25       the publication of 2006, but you don't recall

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

935

1    at this time; is that right?
2    A.  I could have learned of it right after the
3        publication, but I do not recall.
4    Q.  Do you understand that Mr. Bluni is a patent
5        attorney?
6    A.  Yes.
7    Q.  I marked as Exhibit 31 opinion of counsel from
8        Mr. Bluni to Mr. Trowbridge, this one dated
9        August 14, 2014, entitled -- was I wrong about
10       the date?
11   A.  I'm not supposed to correct, but Exhibit 31 is
12       dated July 2, 2013, and it's approximately six
13       inches tall.
14   Q.  Exhibit 31 is from Scott Bluni to Steven
15       Trowbridge, and it is dated July 2, 2013, and
16       it's the invalidity opinion of U.S. Patent
17       Number 8,475,417 to Powers, et al.
18   A.  That's correct.
19   Q.  Do you know anybody who reviewed this opinion
20       in 2013 at AngioDynamics?
21   A.  I would have reviewed it.
22   Q.  Did you ever receive an oral opinion regarding
23       the '417 patent preceding this written opinion?
24   A.  I do not recall.  According to paragraph three,
25       "consistent with an oral opinion we provided

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

936

| | |
|---|---|
| 1 | you in May 2013," so yeah. |
| 2 | Q. Do you know to whom the oral opinion was |
| 3 | provided? |
| 4 | A. Probably to me. |
| 11:14AM 5 | Q. I placed before you what I marked as |
| 6 | Exhibit 32, which is U.S. Patent 8,475,417, and |
| 7 | Exhibit 33, which is a publication 2009/0227951 |
| 8 | A1, which comports to this patent, and ask you |
| 9 | if you're familiar with those. |
| 11:14AM 10 | A. Okay. You said 32 and 33; right? |
| 11 | Q. Correct? |
| 12 | A. Okay. I'm there. |
| 13 | Q. Okay. Are you familiar with these? |
| 14 | A. Yes, I'm aware of these. |
| 11:14AM 15 | Q. Okay. And do you understand they're the |
| 16 | subject of what we've marked already as |
| 17 | Exhibit 31, which is the opinion regarding the |
| 18 | '417 patent; correct? |
| 19 | A. The '417, yes. I do not know if the opinion |
| 11:15AM 20 | references the publication, which is |
| 21 | Exhibit 33. I can tell you in a minute. |
| 22 | Okay, it references both. |
| 23 | Q. Okay. And you received an oral opinion in May |
| 24 | of 2013 with respect to the '417 patent; |
| 11:16AM 25 | correct? |

937

| | |
|---|---|
| 1 | A. "Consistent with the oral opinion we provided |
| 2 | you in May 2013." Yes. |
| 3 | Q. Okay. At that point, the patent hadn't yet |
| 4 | issued; right? |
| 11:16AM 5 | A. And the oral opinion -- that is correct. |
| 6 | Q. So when did you first become aware of the |
| 7 | publication which we've marked as Exhibit 33 |
| 8 | here? |
| 9 | A. I would have become aware of this publication, |
| 11:16AM 10 | which is Exhibit 33, sometime between the |
| 11 | publication date, which is September 10, 2009, |
| 12 | and the -- May 2013, which is when the oral |
| 13 | opinion was given. So sometime in that time |
| 14 | frame. |
| 11:17AM 15 | Q. So could you have become aware of this, then, |
| 16 | shortly after the publication in 2009? |
| 17 | A. This is possible, but I cannot confirm that. |
| 18 | Q. Let me show you what I've marked as Exhibit 34. |
| 19 | Exhibit 34 is a letter from Scott Bluni to |
| 11:17AM 20 | Steven Trowbridge, this one is dated August 12, |
| 21 | 2014. It concerns invalidity opinion of Patent |
| 22 | Number 8,805,478 to Powers, et al. Are you |
| 23 | familiar with this? |
| 24 | A. Yes. |
| 11:18AM 25 | Q. Okay. I placed before you what I've marked as |

938

| | |
|---|---|
| 1 | Exhibit 35, which is a copy of U.S. Patent |
| 2 | 8,805,478 -- |
| 3 | A. Still here, okay. |
| 11:18AM 4 | Q. -- and Exhibit 36, which is a U.S. Patent |
| 5 | publication 2009/0216216 A1 and ask if you're |
| 6 | familiar with these. |
| 7 | A. Yes, I am. |
| 8 | Q. These are the subjects of your opinion letter, |
| 9 | Exhibit 34; correct? |
| 11:18AM 10 | A. The patent is, and I'm not sure whether the |
| 11 | reference to the patent application or not. I |
| 12 | can keep looking, but I can assume that it is. |
| 13 | Q. Let me just reference you on the first page of |
| 14 | Exhibit 34, where it says, "Consistent with the |
| 11:19AM 15 | oral opinion that we provided to you in |
| 16 | May 2014." Do you see that? |
| 17 | A. Yes, I see that. |
| 18 | Q. Okay. And if you look at Exhibit 35, the date |
| 19 | of August 12, 2014, of the patent? |
| 11:19AM 20 | A. Yes, you got me. Yes. |
| 21 | Q. Okay. So when did you first become aware of |
| 22 | the publication? |
| 23 | A. I would have been aware of the publication |
| 24 | sometime between the publication date and the |
| 11:19AM 25 | date of the oral opinion, which was provided to |

939

| | |
|---|---|
| 1 | me in May 2014. |
| 2 | Q. And the publication date here, Exhibit 36, is |
| 3 | August 27, 2009; right? |
| 4 | A. That is correct. |
| 11:20AM 5 | Q. So you may have become aware of that shortly |
| 6 | after that date in 2009; right? |
| 7 | A. That is possible, yes. |
| 8 | Q. Now, to whom was this oral opinion provided? |
| 9 | A. It would have been provided to me. |
| 11:20AM 10 | Are we good with this opinion? |
| 11 | Q. Yeah. I'm going to place in front of you now |
| 12 | what I've marked as Exhibit 39, which is a |
| 13 | letter dated May 3, 2007, to William Appling to |
| 14 | George McGuire and ask if you're familiar with |
| 11:21AM 15 | this letter opinion. |
| 16 | A. What did the '898 turn into? |
| 17 | Q. The '460 patent. |
| 18 | A. The '460 patent. Okay. I've seen this before. |
| 19 | Q. Who's Mr. Appling? |
| 11:21AM 20 | A. Mr. Appling in May 2007 was Vice President of |
| 21 | Research for AngioDynamics Inc. |
| 22 | Q. Who at AngioDynamics, in addition to |
| 23 | Mr. Appling, would have seen this opinion back |
| 24 | in 2007? |
| 11:21AM 25 | A. I probably saw it. |

940

1    Q.   Does that help refresh your recollection on
2         when you first became aware of the '898
3         publication?
4    A.   Yes.
11:22AM 5  Q.  So at least by May of 2007?
6    A.   Or somewhere shortly thereafter.  I am not sure
7         whether -- I cannot remember whether I was
8         involved in this opinion or not.
9              (The video ended.)
11:22AM 10          MR. BLUMENFELD:  Your Honor, that
11        concludes the portions that were played of
12        Ms. King's deposition.  We would like to move
13        into evidence certain exhibits that were
14        referred to.  PX 8, PX 9, PX 64, PX 65, PX 67,
11:23AM 15       PX 82, PX 293, PX 355, and I don't believe
16        there are objections to any of those exhibits.
17             THE COURT:  Any objections?
18             MR. POWELL:  No objections, Your
19        Honor.
11:23AM 20          THE COURT:  8, 9, 64, 65, 67, 82, 293
21        and 355 are received.
22             (Thereupon, Exhibits PX 8, PX 9,
23        PX 64, PX 65, PX 67, PX 82, PX 293, and PX 355
24        were admitted.)
11:23AM 25          MR. BLUMENFELD:  Thank you, Your

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

941

1    Honor.
2              THE COURT:  You may call your next
3         witness.
4              MS. CHENG:  At this point, Bard would
11:23AM 5       like to call its next witness, Dr. Alan Cox.
6              THE COURT:  Dr. Cox, if you stand in
7         front of the court reporter right there, we'll
8         ask a couple questions and swear you in.
9              THE CLERK:  Please state and spell
10        your name for the record.
11             THE WITNESS:  My name is Alan,
12        A-L-A-N, James, J-A-M-E-S, Cox, C-O-X.
13             ALAN COX,
14        called as a witness on behalf of the
15        Defendant, was sworn, and testified
16        as follows:
17             MS. CHENG:  Your Honor, may we
18        approach with binders?
19             THE COURT:  Yes, you may.
11:24AM 20          DIRECT EXAMINATION
21    BY MS. CHENG:
22    Q.   Good morning, Dr. Cox.  Would you please
23        introduce yourself to the jury.
24    A.   My name is Alan Cox.
11:25AM 25  Q.  What do you do for work, Dr. Cox?

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

942

1    A.   I'm an economist.
2    Q.   What does an economist do?
3    A.   An economist basically -- the sort of economics
4         I do, we study how markets work.  We figure out
11:25AM 5       or think about how supply and demand interact
6         with each other in markets and how that leads
7         to, for instance, the creation of prices and
8         the impact of technology on how, in what
9         manner, in which markets work, and the impact
11:25AM 10       of regulations.
11    Q.   And how long have you been an economist?
12    A.   I've been working as a professional economist
13        since 1978, so about 45 years.
14    Q.   Briefly, what are you here to talk to us about
11:25AM 15       today?
16    A.   As you heard, AngioDynamics is accused of
17        infringing Bard's patents, and I'm here to talk
18        about the harm suffered by Bard as a result of
19        that infringement and to calculate the damages
11:25AM 20       or the amount of money that would compensate
21        Bard for that harm.
22    Q.   And did you prepare any demonstratives to help
23        with your testimony today?
24    A.   Yes, I did.
11:26AM 25  Q.  And is this the first -- the cover of your

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

943

1    demonstrative?
2    A.   Yes, it is.
3    Q.   And that's PDX 4.1?
4    A.   Yes, it is.
11:26AM 5  Q.   So looking at this slide, would you please tell
6         the jury about your educational background.
7    A.   Sure.  I went to college at York University in
8         Toronto.  I have a master's degree in economics
9         from the University of British Columbia, and
11:26AM 10       then I've also got a Ph.D. in economic analysis
11        and policy from the business school at the
12        University of California at Berkley.
13    Q.   And it says here you have some experience at
14        MIT.  Can you tell us a little bit about that.
11:26AM 15  A.   Sure.  Between doing my master's degree and
16        Ph.D., I spent three years as a research
17        economist at the Energy Lab at MIT.  It's
18        called the Energy Lab at MIT.  And I was doing
19        economic analysis on the economic impact of
11:27AM 20       incorporating alternative energy sources into
21        the energy system.
22    Q.   And so what did you do after obtaining your
23        Ph.D., then?
24    A.   Started working as an economic consultant,
11:27AM 25       eventually ending up at a firm called NERA,

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

# EXHIBIT 18

# FULLY REDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| C.R. BARD, INC. and | ) | |
| BARD PERIPHERAL VASCULAR, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 20-1544 (CFC) (SRF) |
| v. | ) | |
| | ) | |
| ANGIODYNAMICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**[PROPOSED] ORDER REGARDING PARTIES'
JOINT MOTION FOR CONFERENCE (D.I. 309)**

Having reviewed the parties' submissions related to D.I. 309, Plaintiffs' motion is GRANTED.  It is hereby ORDERED that within 7 days of this Order Defendant AngioDynamics, Inc.  shall:

1.      Provide a complete response to Plaintiffs' Joint Interrogatory No. 4 and Requests for Production Nos. 42 and 65, including information sufficient to show transaction-level and SKU-level sales data, including units sales, total revenues, and proftis, for each product accused of infringement (including the SmartPort+);

2.      Supplement its responses to Plaintiffs' Joint Interrogatories 3 and 5 with respect to Defendant's first awareness of the Asserted Patents and U.S. Patent Publication Nos. 2006/0247584, 2009/0204072, 2008/0140025 and 2010/0211026.   Defendant's responses shall identify any factual information responsive to Interrogatories 3 and 5, including any factual, non-privileged information contained in opinions of counsel.   In supplementing its responses, Defendant shall take steps to ensure that its responses are accurate, including providing a statement under Rule 33 that such responses are being made under oath; and

1

3.      Produce non-privileged documents responsive to Plaintiffs' Requests for Production Nos. 55-70, including technical and financial documents relating to Defendant's SmartPort+ products.


Date:


_____
United States Magistrate Judge