IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., </br></br> Plaintiffs / Counterclaim-Defendants, </br></br> v. </br></br> ANGIODYNAMICS, INC., </br></br> Defendant / Counterclaim-Plaintiff. | Civil Action No. 20-1544-CFC-SRF |

**MEMORANDUM ORDER**

At Wilmington this **23rd** day of **August, 2023**, the court having considered the renewed motion to compel the production of customer level sales data from 2012 to the present, filed by plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. ("Plaintiffs"), (D.I. 400; D.I. 401), and the responsive submission filed by defendant AngioDynamics, Inc. ("Defendant"), (D.I. 404), IT IS ORDERED that Plaintiffs' motion to compel is DENIED for the following reasons:

1. **Background.** This case was originally filed in the District of Utah on January 11, 2012. (D.I. 2) Under the operative scheduling order deadlines, the deadline for production of documents expired on June 2, 2023. (D.I. 273) The fact discovery deadline has been extended by stipulation to August 25, 2023. (D.I. 399) Opening expert reports are due less than a week later, on September 1, 2023. (*Id.*) Expert discovery closes on October 27, 2023, and case dispositive motions are due on November 14, 2023. (*Id.*) A jury trial is scheduled to begin on April 29, 2024. (D.I. 273)

2. Plaintiffs first notified the court of this dispute regarding the requested production of customer level sales data dating back to 2012 in a joint motion for a discovery dispute

conference filed on June 14, 2023, more than a week after the deadline for the substantial completion of the production of documents. (D.I. 309) The court decided the matter on the papers on July 12, 2023, denying Plaintiffs' request for customer level sales data for an eleven-year period as unduly burdensome. (D.I. 350 at ¶ 1) In support of the renewed motion, Plaintiffs argue that recent discovery suggests Defendant's prior arguments on burden misrepresented the facts, and customer level sales data kept in the ordinary course of business should be produced. (D.I. 401 at 1)

      **3. Analysis.** Plaintiffs' renewed motion to compel is DENIED. Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). On this record, Plaintiffs have established only minimal relevance of the requested information, and Defendant has shown that producing the requested discovery would be unduly burdensome and disproportional to the needs of the case.

      **4. *Relevance.*** Plaintiffs argue that the customer level sales data is relevant to the lost profits analysis, as shown by Defendant's own discovery requests putting the identity of specific customers at issue. (D.I. 401 at 1) Plaintiffs refer to Defendant's first set of interrogatories without providing a specific page number or interrogatory number within the 20-page document. (*Id.*) Based on a text search of the exhibit, it appears Plaintiffs intend to direct the court to Interrogatory No. 2, which seeks the "factual and legal bases for Bard's claim for damages," including "the specific inputs that Bard alleges should be used under each [damages] theory . . . (*e.g.*, identification and explanation of (i) all allegedly lost sales[.])" (*Id.*, Ex. B at 11) Plaintiffs also cite Topic 26 from Defendant's 30(b)(6) notice of deposition, which requests "[t]he revenue and profits Bard would have generated but for AngioDynamics's alleged infringement. . .

2

including: The number of Bard products that allegedly practice the Asserted Patents that Bard would have sold. . . The revenue from each sale. . . The purchaser of each AngioDynamics Accused Product." (*Id.*, Ex. C at 17) Plaintiffs allege that they need reciprocal customer-level information from Defendant to enable them to respond to Defendant's attacks on the lost profits theory of damages. (*Id.* at 2)

5. Beyond developing a response to "Angio's *potential* criticism of its damages claim," Plaintiffs do not articulate another basis for relevance under the lost profits theory. (*Id.*) (emphasis added). In fact, Plaintiffs make a point of stating that they "do[ ] not concede that identifying specific lost sales is a requirement for lost profits[.]" (*Id.*); *see Syngenta Crop Protection, LLC v. Willowood, LLC*, C.A. No. 16-mc-171-RGA, 2016 WL 4925099, at *4 (D. Del. Sept. 14, 2016) (finding that the defendant "presented no authority in support of its assertion that the identity of the purchasers or the categories of customer are relevant, let alone necessary, to a lost profits claim."). At most, Plaintiffs have established that the requested discovery may be relevant going forward if Defendant pursues certain criticisms of Plaintiffs' damages theory. But there is no evidence on the present record confirming that Plaintiffs responded substantively to either of the two cited discovery requests in a manner that would enable Defendant to advance any such criticism. The interrogatories attached to Plaintiffs' letter submission were served by Defendant in April, and Plaintiffs did not include their responses to those interrogatories. (D.I. 401, Ex. B) Moreover, the record shows that Plaintiffs did not designate a witness on Topic 26, and there is no evidence in the record before the court that Plaintiffs otherwise provided discovery to Defendant responsive to this topic. (D.I. 404, Ex. F at 27-28) Thus, Plaintiffs' proffered concern regarding what discovery they suppose Defendant may use to attack Plaintiffs' damages theory is even more remote.

6. Plaintiffs also suggest that the requested discovery is necessary to clear up alleged discrepancies in the sales information that was already produced by Defendant. (*Id.*) But the record shows that at least some of the confusion resulted from Plaintiffs' use of an incorrect version of DELANGIO_00535471 during the recent deposition of Defendant's 30(b)(6) witness, Brian McTiernan. (D.I. 401, Ex. A at 1) Defendant represents that McTiernan was questioned on the correct version of this document during his 2017 deposition, and Plaintiffs' damages expert was able to provide reports and damages theories detailing the revenues and units of products sold by Defendant, by quarter, through August of 2022. (D.I. 404 at 4 & n.4) Defendant reiterates that Plaintiffs previously sought lost profits in Civil Action No. 15-218-JFB-SRF, and Plaintiffs' expert did not identify any inconsistencies in Defendant's data in his report or in two separate jury trials. (*Id.* at 1; Ex. A) Consequently, the relevance of the requested discovery to the resolution of purported discrepancies in the data produced to date is minimal, at best. Furthermore, the present discovery dispute is distinguishable from the issues raised in *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, C.A. No. 15-634-SLR-SRF, 2018 WL 11426940 (D. Del. Jan. 3, 2018), which involved four attorney-generated spreadsheets disclosing inconsistent data that also contradicted witness testimony.

7. ***Proportionality.*** Plaintiffs argue that the production of customer level sales data from 2012 to the present would not be unduly burdensome for Defendant because Defendant maintains this data in the ordinary course of business in its Oracle database. (D.I. 401 at 3) However, the evidence of record establishes that only data from recent years is readily accessible. (D.I. 404, Ex. B at 36:11-24; Ex. C at 100:2-18; Ex. D at ¶ 5) To access and generate a report on customer level sales data for years prior to 2019, Defendant would need to

retain a third-party developer to develop custom source code or tools to make sense of the data stored in "raw form." (*Id.*, Ex. C at 103:5-104:11, 114:18-115:17, 119:21-25; Ex. D at ¶¶ 8-9)

8. As stated at ¶¶ 4 to 6, *supra*, the court finds that Plaintiffs have not carried their burden of showing the information sought is relevant to their damages claim for lost profits. To produce this discovery, Defendants would need to first develop code or tools to access the data, and then review eleven years' worth of customer level sales data. The burden and expense of this proposed discovery outweighs its likely benefit and is not proportional to the needs of the case. Moreover, compelling a burdensome and voluminous production two days before the extended fact discovery cutoff, and one week before the deadline for opening expert reports, would serve only to further delay the case schedule. *See Head v. Rocha*, 2023 WL 4157458, at *2 (C.D. Cal. Mar. 24, 2023).

9. **Conclusion.** For the foregoing reasons, IT IS ORDERED that Plaintiffs' motion to compel the production of customer-level sales data from 2012 to the present is DENIED. IT IS FURTHER ORDERED that the discovery dispute teleconference set in this matter for August 23, 2023 at 3:00 p.m. is CANCELLED.

10. Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **August 30, 2023**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting

*Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

11. This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

12. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge