IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., | ) ) ) | |
| Plaintiffs / Counterclaim-Defendants, | ) ) ) | Civil Action No. 20-1544-CFC-SRF |
| v. | ) ) ) | |
| ANGIODYNAMICS, INC., | ) ) ) | |
| Defendant / Counterclaim-Plaintiff. | ) ) | |

## MEMORANDUM ORDER

At Wilmington this **8th** day of **September, 2023**, the court having considered the letter briefing on the parties' competing discovery motions, (D.I. 418; D.I. 419; D.I. 420; D.I. 421), and the arguments presented during the hearing on September 8, 2023, IT IS ORDERED that the parties' discovery motions are addressed as follows:

1. **Background.** This is the latest in a series of discovery disputes in a case pending since 2012 and transferred to this district in 2020. (D.I. 2; D.I. 200) The parties have already been through two jury trials in 2019 and 2022 in a related civil action, as well as an appeal to the Federal Circuit. (C.A. No. 15-218-JFB-SRF, D.I. 449; D.I. 468; D.I. 565) Under the operative scheduling order deadlines in this case, the deadline for production of documents expired on June 2, 2023. (D.I. 273) The fact discovery deadline was extended by stipulation to August 29, 2023. (D.I. 412) Opening expert reports were due on September 1, 2023. (D.I. 399) Expert discovery closes on October 27, 2023, and case dispositive motions are due on November 14, 2023. (*Id.*) A jury trial is scheduled to begin on April 29, 2024. (D.I. 273)

I. **DEFENDANT'S ISSUES**

**2. Defendant's motion to compel further depositions of David Cise and Judi Albiston and for monetary sanctions is MOOT.** During oral argument on September 8, the parties reached agreement on the issue of supplemental depositions. The transcript will serve as the record memorializing the parties' agreement.

3. The parties did not resolve the matter of Defendant's motion for sanctions covering the costs of further depositions resulting from Plaintiffs' alleged misuse of the protective order. Defendant's motion for sanctions is DENIED. Rule 37(a)(5) provides that, if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion[.]" Fed. R. Civ. P. 37(a)(5). Rule 37 also outlines several exceptions, instructing that "the court must not order this payment if . . . (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(iii). Here, the parties do not dispute that Plaintiffs previously offered to make Cise available for two additional hours of deposition without court intervention, and Defendant declined the offer.[1] It would therefore be unjust to award monetary sanctions to Defendant for relief that was voluntarily offered by Plaintiffs.

**4. Defendant's motion to compel the 30(b)(6) deposition of a prepared witness on Topics 41, 49, 61, and 62 is MOOT.** During oral argument on September 8, the parties reached

---

[1] The court recognizes that Defendant declined the offer of a supplemental deposition based on alleged additional conditions imposed by Plaintiffs. Nonetheless, the parties were able to agree to the additional two hours of deposition time without further restrictions in a recess during the September 8 hearing. Court intervention was not necessary to resolve this dispute.

2

agreement on the issue of a supplemental 30(b)(6) deposition on these topics. The transcript will serve as the record memorializing the parties' agreement.

5. **Defendant's motion to compel fourteen deposition hours with Kelly Powers is DENIED.** Defendant seeks an additional 3.5 hours of deposition testimony from inventor Kelly Powers. (D.I. 418 at 3-4) In support of the motion, Defendant stresses that Powers was the "star trial witness" during the 2019 and 2022 trials, and he has been designated on over thirty topics in this case. (*Id.* at 3) But it is undisputed that Powers previously provided two full days of deposition testimony in each of two related litigations on largely overlapping topics. (*Id.* at 3-4; D.I. 420, Ex. 13) Defendant's position that it had insufficient time to cover all thirty deposition topics is further contradicted by the parties' mutual agreement to cap the deposition in this case at 10.5 hours.[2] (D.I. 420, Ex. 12)

6. Defendant also argues that additional deposition time is needed because Powers was unprepared to testify on some designated topics. (D.I. 418 at 4) Defendant identifies only one topic on which Powers was allegedly unprepared, regarding the assignees of the Asserted Patents. (D.I. 418 at 4) The testimony Defendant cites in support of this argument shows that Powers was not certain about which Bard entity was assigned the Asserted Patents. (*Id.*, Ex. E at 10:2-12; 473:6-22) The transcript also shows that Defendant refused to show Powers the relevant records that would enable him to clarify this testimony. (*Id.* at 512:10-513:13)

7. Defendant contends that further deposition testimony is needed because Powers testified about documents that had not been produced. (*Id.* at 4) Powers testified that certain

---

[2] The court recognizes that Defendant reserved its right to a full fourteen hours of deposition time when it agreed to 10.5 hours, and Powers' testimony in other cases was taken by other attorneys and was a mix of fact and corporate testimony. Still, the fact remains that there is an overlap in his testimony across cases, and Defendant did not start the 30(b)(6) deposition in this case with a blank slate.

3

measurement information would be found in the lot history record for the lot number. (*Id.*, Ex. E at 507:7-508:508:23) The lot history record was not before Powers during the deposition, nor did he testify that he had reviewed the lot history record in preparation for the deposition. (*Id.*) The record confirms that all of the documents Powers reviewed in preparing for his deposition were produced, and Plaintiffs made an effort to locate and produce the lot history record referenced by Powers during the deposition. (D.I. 420, Ex. 15) Powers' mention of the lot history record does not necessitate an additional 3.5 hours of deposition testimony. Consequently, Defendant's motion for fourteen hours of Powers' deposition testimony is DENIED.

**8. Defendant's motion to strike SmartPort+ from Plaintiffs' final infringement contentions is DENIED.** Defendant argues that Plaintiffs' identification of SmartPort+ as an accused instrumentality in the final infringement contentions should be stricken as untimely. (D.I. 418 at 4) But there is no dispute that Plaintiffs' final infringement contentions were timely served. (D.I. 273 at ¶ 9; D.I. 348, Ex. I) As such, the *Pennypack* analysis does not apply[3] and there is no basis to strike the timely-served infringement contentions at this stage of the proceedings. *See TQ Delta, LLC v. ADTRAN, Inc.*, C.A. No. 14-954-RGA, 2021 WL 3633637, at *2-3 (D. Del. Aug. 17, 2021) (declining to engage in *Pennypack* analysis where final infringement contentions were timely served prior to opening expert reports); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, C.A. No. 13-1668-LPS *et al.*, 2017 WL 658469, at *5

---

[3] Courts in the Third Circuit consider the *Pennypack* factors to determine whether an untimely disclosure is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld." *TQ Delta, LLC v. ADTRAN, Inc.*, C.A. No. 14-954-RGA, 2019 WL 4346530, at *1 (D. Del. Sept. 12, 2019).

(D. Del. Feb. 14, 2017) (denying motion to strike final infringement contentions where the plaintiff "permissibly relied on the opportunity provided in the scheduling order to finalize infringement contentions[.]"). The matter is not ripe for resolution by the court and is denied without prejudice to renew in case dispositive motions.

9. Defendant maintains that the SmartPort+ should be stricken from Plaintiffs' final infringement contentions under the court's July 12 Oral Order, which denied Plaintiffs' motion to compel the production of additional discovery on the SmartPort+ as untimely. (D.I. 418 at 4; D.I. 350 at ¶ 3) But a decision not to broaden the scope of discovery[4] in an untimely manner has no bearing on a party's timely assertion of an accused product—the untimeliness of the requested discovery and the status of Plaintiffs' final infringement contentions are two separate issues. Furthermore, Defendant has not identified a violation of a discovery order that would support the motion to strike. Defendant is not left without the ability to challenge whether SmartPort+ should be in the case because it has the opportunity to do so through summary judgment and/or *Daubert* motions.

## II. PLAINTIFFS' ISSUES

**10. Plaintiffs' motion for sanctions for alleged false interrogatory responses is GRANTED-IN-PART.** Plaintiffs seek sanctions in the form of an adverse inference jury instruction and costs to remedy Defendant's alleged service of false interrogatory responses regarding its first awareness of the asserted patents. (D.I. 419 at 1) Defendant originally maintained that it first became aware of the asserted patents when the complaint was filed in

---

[4] As indicated in the court's July 12 Oral Order and confirmed during the oral argument on September 8, 2023, Plaintiffs are in possession of discovery, including core technical documents, on the SmartPort+ and that Plaintiffs' expert has since relied on that discovery in opening expert reports. (D.I. 350; 9/8/2023 Tr.)

January of 2012. (*Id.*) Plaintiffs allege that they alerted Defendant to numerous pieces of evidence demonstrating the falsity of this response prior to the July 2023 discovery dispute proceeding. (*Id.*) Despite Plaintiffs' evidence and the court's July 12 Oral Order compelling Defendant to verify the interrogatory responses, Defendant maintained its original position that it first became aware of the asserted patents when this lawsuit was filed on January 11, 2012. (D.I. 419, Ex. 3) Defendant did not correct its interrogatory response until August 3, when it represented that it was aware of two of Plaintiffs' published patent applications on April 16, 2010, and became aware of a third on January 3, 2007. (*Id.*, Ex. 1 at 19) Thereafter, Defendant permitted Plaintiffs to re-depose Peter Flora on the topic. (*Id.*, Ex. 5)

**11.** Rule 26(e) imposes a continuing obligation to timely supplement or correct discovery disclosures. Fed. R. Civ. P. 26(e). A failure to provide information under Rule 26(e) may lead to the exclusion of the materials in question under Rule 37(c)(1), unless the failure to disclose is substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *see IBM Corp. v. Priceline Grp. Inc.*, 217 F. Supp. 3d 667, 693 (D. Del. 2017) (internal quotation marks and citations omitted). Rule 37(c)(1) further provides for additional or alternative sanctions, "on motion and after giving an opportunity to be heard," including "inform[ing] the jury of the party's failure[.]" Fed. R. Civ. P. 37(c)(1)(B).

**12.** Plaintiffs' motion for sanctions is GRANTED with respect to their request for fees and costs incurred in conducting a second deposition of Peter Flora, and it is DENIED in all other respects. Defendant has not shown that its failure to timely correct its interrogatory response was substantially justified. Defendant presents arguments about the thoroughness of its investigation on the matter and the irrelevance of the documents that ultimately led it to correct its response. (D.I. 421 at 1-2) But Defendant fails to address the fact that Plaintiffs provided

6

evidence of Defendant's earlier knowledge in their July 10 discovery dispute letter submission. (D.I. 342 at 3) Attached to Plaintiffs' letter were numerous exhibits showing that Defendant had itself cited the relevant patent publications to the PTO, and the PTO had likewise cited the '022 patent in an office action sent to Defendant on July 27, 2011.[5] (*Id.*; Exs. 8-12) Nonetheless, Defendant verified its original interrogatory response ten days later, and Flora testified under oath at his deposition on July 28 that Defendant did not know of the asserted patents prior to the date of the complaint. (D.I. 419, Ex. 3; Ex. 4 at 132-33; Ex. 10)

**13.** Because the inquiry under Rule 37(c)(1) is disjunctive, Plaintiffs must also establish that they suffered harm from Defendant's failure to timely supplement. The only specific harm Plaintiff has identified relates to the fees and costs associated with Flora's second deposition.[6] Plaintiffs concede that Defendant served corrected interrogatory responses on August 3, 2023, and the corrected responses established Defendant's awareness of the publications corresponding to the asserted patents prior to the date the complaint was filed. (D.I. 419 at 2; Ex. 1 at 19) Plaintiffs also acknowledge that Defendant made Flora available for a second deposition after serving its corrected interrogatory responses. (*Id.*; Ex. 5) And Plaintiffs did not serve a request for admission on this topic which might have positioned them for obtaining further relief. (9/8/2023 Tr.); *see* Fed. R. Civ. P. 37(c)(2). While Plaintiffs focus on the allegedly egregious and purposeful nature of Defendant's conduct, they fail to identify any harm they have suffered

---

[5] At oral argument, Defendant suggested that the reference to the '022 patent was "buried" in the examiner's office action. But a review of the examiner's communication reveals that only sixteen total references were cited by the examiner to Defendant on Defendant's own application. (D.I. 419, Ex. 2)

[6] Deterrence of future conduct by other litigants in other cases does not demonstrate harm to Plaintiffs. At the September 8 hearing, Plaintiffs also questioned whether the corrected interrogatory response was accurate and argued that the use of trial time to address this issue would be prejudicial. (9/8/2023 Tr.) Plaintiffs conceded that they had not served a request for admission on this topic. (*Id.*)

as a result of that conduct which would justify the sanction of an adverse inference jury instruction. (D.I. 419 at 2-3) In accordance with this ruling awarding costs, on or before September 13, 2023, Plaintiffs shall submit a declaration in support of an accounting setting forth the amount of time spent at a reasonable rate and out of pocket expenses incurred in taking the second deposition of Peter Flora.

**14.** Plaintiffs also seek reimbursement for the costs of bringing this motion. (D.I. 419 at 3) However, due to the number of issues raised by Plaintiffs in connection with this discovery dispute hearing, there is no reasonable way to isolate this discrete issue from the time the court has spent adjudicating multiple issues. Consequently, Plaintiffs' request for monetary sanctions for the cost of bringing the sanctions motion is DENIED.

**15. Plaintiffs' motion to compel the production of documents improperly withheld or redacted as privileged is GRANTED-IN-PART.** Plaintiffs challenge Defendant's assertion of attorney client and/or work product privilege with respect to ten documents, which Defendant has submitted to the court for *in camera* review.[7] (D.I. 419) Defendant maintains its assertion of privilege over these documents. (D.I. 421)

**16.** The attorney client privilege protects communications between an attorney and a client. *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007). The party claiming attorney client privilege bears the burden of demonstrating its applicability. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012). To satisfy this burden, Defendant must demonstrate that the

---

[7] Although Defendant submitted eleven documents for *in camera* review, Defendant acknowledges that Plaintiffs are not challenging Defendant's privilege assertion for the document attached as Exhibit 2 to the *in camera* review. (D.I. 428) Defendant originally submitted ten documents for *in camera* review, until the court entered an oral order on September 7 requesting a table of contents for the *in camera* submission. Defendant attached an additional exhibit to the requested table of contents, bringing the aggregate total of exhibits for *in camera* review to eleven. (D.I. 428)

documents are "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purposes of obtaining or providing legal assistance of the client." *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011). The privilege protects only communications, and not facts. *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981). The primary purpose of the communication must be to solicit or render legal advice, and merely sending a communication to an attorney or attaching a document to a privileged or protected communication does not automatically invoke the privilege. *Allscripts Healthcare, LLC v. Andor Health, LLC*, C.A. No. 21-704-MAK, 2022 WL 605347, at *1 (D. Del. Jan. 27, 2022).

**17.** The work product doctrine, which is broader than the attorney client privilege, permits a party to withhold documents prepared in anticipation of litigation when the party can prove the relevant material: (1) was prepared by the party or its attorney, (2) in anticipation of litigation or for trial. *Novartis Pharma. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001); *see* Fed. R. Civ. P. 26(b)(3)(A). The party asserting the work product protection bears the burden to show that the doctrine applies. *See Elm 3DS Innovations, LLC v. Samsung Elecs. Co., Ltd.*, C.A. No. 14-1430-LPS-JLH, 2021 WL 4819904, at *2 (D. Del. Oct. 15, 2021) (citing *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 477-78 (D. Del. 2012)). If that burden is satisfied, the party seeking production may obtain discovery "only upon a showing that the party . . . has a substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the special equivalent of the materials by other means." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000); Fed. R. Civ. P. 26(b)(3). The court considers whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park*

9

*Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993). Although the work product doctrine protects an attorney's thought processes, it does not protect the facts underlying such thoughts or opinions. *Allscripts*, 2022 WL 605347, at *2.

**18.** Below is a chart outlining the ten documents at issue and where those documents are located or referenced in the record. Plaintiffs categorize these ten documents into two groups: (1) memos addressed to the "Legal Department," and (2) design and marketing documents. (D.I. 419 at 3) Documents in the first group, which Defendant attached as Exhibits 1, 3, 4, 5, and 6 to their *in camera* submission, have been withheld in their entirety based on the assertion of both attorney client privilege and work product protection. (*Id.*, Exs. 6-7) Documents in the second group, which Defendant attached as Exhibits 7, 8, 9, 10, and 11 to their *in camera* submission, have been produced in redacted format as shown at D.I. 419, Exs. 11, 12, 13, 14, and 15.

| *IN CAMERA* EXHIBITS | LOCATION ON LOG / IN RECORD | DATE | TO / FROM |
|---|---|---|---|
| **Ex. 1** – Single Reservoir Plastic Port Product Clearance Analysis | D.I. 419, Ex. 7 at #2 | 8/27/2010 | From Clothier To Legal Dept. |
| **Ex. 2** – Memo re: AngioDynamics port study | Privilege assertion not challenged by Plaintiffs | 1/22/2007 | From McGuire & Nocilly To William Appling |
| **Ex. 3** - Single Reservoir Plastic Port Product Clearance Analysis | D.I. 419, Ex. 6 at #2 | 8/31/2010 | From Clothier To Legal Dept. |
| **Ex. 4** - Single Reservoir Plastic Port Product Clearance Analysis | D.I. 419, Ex. 6 at #3 | 4/16/2010 | From Clothier To Legal Dept. |
| **Ex. 5** – Appendix A to Ex. 4 | D.I. 419, Ex. 6 at #4 | 4/16/2010 | From Clothier To Legal Dept. |
| **Ex. 6** – Appendix B to Ex. 4 | D.I. 419, Ex. 6 at #5 | 4/16/2010 | From Clothier To Legal Dept. |
| **Ex. 7** – Single Lumen Plastic Smart Port (PSP) Design Project Plan | D.I. 419, Ex. 12 (redacted); Ex. 8 at #2 | Undated | |
| **Ex. 8** – Team meeting minutes | D.I. 419, Ex. 14 (redacted); Ex. 8 at #3 | 8/9/2010 | |

10

| Ex. 9 – Single Lumen PSP Design Input Requirements Report | D.I. 419, Ex. 13 (redacted); Ex. 8 at #5 | 1/17/2011 | |
|---|---|---|---|
| Ex. 10 – IGVA Segment Review | D.I. 419, Ex. 15 (redacted); Ex. 8 at #13 | 7/3/2007 | |
| Ex. 11 – Plastic CT Port Project: Marketing Specifications | D.I. 419, Ex. 11 (redacted); Ex. 8 at #25 | 3/4/2010 | |

19.     Plaintiffs' motion to compel is DENIED with respect to the first category of documents because they are protected under the attorney client privilege. It is undisputed that these documents were authored by Tara Clothier, Defendant's sole in house patent counsel, and were submitted to Defendant's legal department. (D.I. 419, Exs. 6-7) As in house counsel, Clothier's "client" is Defendant. The documents are marked "Confidential, Attorney-Client Privileged" in the footer, and they contain freedom to operate analyses advising Defendant on whether the identified product would likely infringe the prior art. Thus, the primary purpose of the documents is to provide legal advice. Plaintiffs cite *High Point SARL v. Sprint Nextel Corp.* in support of their assertion that these documents are effectively a "memo to file" which is not subject to the attorney client privilege because it does not identify a recipient. 2012 WL 234024, at *15 (D. Kan. Jan. 25, 2012) (concluding that an attorney's notes or memoranda to file are not privileged if they are not communicated to the client). But *High Point* is distinguishable because the record establishes that the Category 1 exhibits in this case were communicated to engineers employed by Defendant. (D.I. 428, Ex. 1 at 23) (produced *in camera*). Having determined that the documents in the first category are protected under the attorney-client privilege, there is no need for the court to reach an analysis of the work product doctrine.

20. Plaintiffs' motion to compel the production of unredacted versions of documents in the second category is GRANTED. Defendant originally produced these documents on an

11

unspecified date Plaintiffs represent was "years ago." (D.I. 419 at 4) Defendant subsequently clawed them back on July 20, 2023 on the basis of attorney client privilege. (*Id.*, Ex. 8)

**21.** Before turning to each of the documents in the second category individually, the court addresses the overarching issue regarding whether these documents are communications made between privileged persons. The applicable privilege log does not clearly identify whether an attorney prepared or received the document.[8] (*See, e.g.*, D.I. 419, Ex. 8 at 1) (identifying author as "skenny"). Plaintiffs maintain that "none of these documents are authored or addressed to a lawyer." (*Id.* at 4) Defendant does not directly refute this assertion, instead suggesting that each of the redactions "contains or reflects legal advice provided confidentially by [unspecified] attorneys on behalf of their client[.]" (D.I. 421 at 4) Defendant's responsive letter submission does not mention the applicable privilege log attached to Plaintiffs' submission, let alone identify the attorney(s) associated with each document in the second category. Thus, Defendant has failed to carry its burden to establish the applicability of the attorney client privilege. *See In re Grand Jury*, 705 F.3d at 160.

**22.** Defendant has also failed to show that the primary purpose of the redacted material was to solicit or render legal advice. Instead, these documents confirm that their primary purpose was for design and marketing purposes. The document attached in redacted form as Exhibit 12 to Plaintiffs' opening letter submission and in its entirety as Exhibit 7 to Defendant's *in camera* submission does not contain privileged content. The redactions are limited to two sentences which acknowledge that a freedom to operate analysis was performed on the product

---

[8] At the September 8 hearing, Defendant indicated that in house IP counsel Tara Clothier is identified as a participant on meeting minutes attached as Exhibit 14 to D.I. 419. This identification of participants does not suggest that Clothier prepared or received the minutes which are the subject of this dispute.

described in the document. (D.I. 419, Ex. 12 at 4) No information about the substance or results of the freedom to operate analysis is disclosed. Thus, Defendant has failed to show that the redacted material in Exhibit 12 to D.I. 419 is a communication made for purposes of obtaining or providing legal advice.

23. The technical design input document attached in redacted form as Exhibit 13 to D.I. 419 similarly contains a very limited redaction. (D.I. 419, Ex. 13 at 29-30) Exhibit 9 of Defendant's *in camera* submission includes two lines of redacted content making a conclusory statement with no legal analysis or discussion in support, and there is no indication of attorney involvement for the reasons previously discussed at ¶ 21, *supra*. Nearly identical redacted content is found in Exhibit 11 to D.I. 419, which corresponds to late-produced Exhibit 11 of Defendant's *in camera* production, and the same analysis applies.

24. The meeting minutes attached as Exhibit 14 to D.I. 419 include redactions of line items 3 and 14 and an additional note marked "History." Exhibit 8 of Defendant's *in camera* submission reveals that the third item simply provides a date by which Clothier intends to provide an updated report. No substantive information regarding the nature of the report is provided. Item 14 and the additional note on "History" reference actions needed in response to a legal issue. Nonetheless, the individuals involved in these action items are all non-attorneys responsible for product development and process engineering. There is no indication that these meeting minutes were made to solicit or render legal advice, and Defendant has not attempted to meet its burden to show otherwise with respect to this specific information.

25. The IGVA Segment Review attached as Exhibit 15 to D.I. 419 redacts information in the "IP Updates" section of various slides which identifies potential infringement issues. Plaintiffs allege, and Defendant does not deny, that relevant portions of this document were

marked as a deposition exhibit in 2017 in Civil Action No. 15-218-JFB-SRF, and Defendant did not claw back the document until after the deposition concluded. (D.I. 419 at 4) Despite the claw back, Plaintiffs allege (and Defendant does not deny)[9] that Defendant took no steps "to ensure that the exhibit marked with the court reporter was destroyed or returned such that the unredacted version of this document remains part of the King deposition exhibit set to this day." (*Id.*) Defendant's disclosure of this allegedly privileged exhibit to a third party, which has apparently remained on the public record in a related case for more than five years, amounts to a waiver of the attorney client privilege. *See Westinghouse Elec. Corp. v. Republic of the Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1991) (holding that "disclosure to a third party waives the attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance."). For these reasons, Plaintiffs' motion to compel the production of unredacted versions of documents in the second category is GRANTED. Defendant shall produce unredacted versions of the documents found at D.I. 419, Exs. 11, 12, 13, 14, and 15 after the expiration of the objections period in Fed. R. Civ. P. 72(a) and the resolution of objections, if any, by the District Judge.

26. **Conclusion.** For the foregoing reasons, IT IS ORDERED that:

(i) Defendant's motion to compel further depositions of David Cise and Judi Albiston is MOOT based on the parties' resolution of this issue during the

---

[9] Although Plaintiffs discussed this particular document at length in their opening letter submission and Defendant bears the burden on matters of privilege, Defendant's response is limited to a footnote. (D.I. 421 at 4 n.8); *see Perrong v. Liberty Power Corp., L.L.C.*, 411 F. Supp. 3d 258, 268 n.11 (D. Del. 2019) ("The Court . . . need not address arguments raised entirely in footnotes."). Substantively, Defendant suggests that the information is properly privileged because the deponent was not asked any questions on the privileged portion of the document. But this fails to address the critical fact that the entire unredacted document remained attached as an exhibit to the deposition transcript for more than five years.

hearing on September 8, 2023. The transcript of the proceeding shall serve to memorialize the details of the parties' agreement.

(ii) Defendant's motion for monetary sanctions regarding the depositions of David Cise and Judi Albiston is DENIED.

(iii) Defendant's motion to compel the 30(b)(6) deposition of a prepared witness on Topics 41, 49, 61, and 62 is MOOT based on the parties' resolution of this issue during the hearing on September 8, 2023. The transcript of the proceeding shall serve to memorialize the details of the parties' agreement.

(iv) Defendant's motion to compel fourteen deposition hours with Kelly Powers is DENIED.

(v) Defendant's motion to strike SmartPort+ from Plaintiffs' final infringement contentions is DENIED.

(vi) Plaintiffs' motion for sanctions is GRANTED-IN-PART. Specifically, the motion is GRANTED with respect to fees and costs associated with taking a supplemental deposition of Peter Flora. On or before September 13, 2023, Plaintiffs shall provide the court with a declaration in support of an accounting setting forth the amount of time spent at a reasonable rate and out of pocket expenses incurred in taking the second deposition of Flora. Plaintiffs' motion for sanctions is DENIED with respect to the request for an adverse inference jury instruction and fees and costs associated with the pending motion.

(vii) Plaintiffs' motion to compel the production of documents improperly withheld or redacted as privileged is GRANTED-IN-PART. The motion is DENIED with respect to the first category of documents found at Exhibits 1, 3, 4, 5, and

6 of the *in camera* submission. The motion is GRANTED with respect to the second category of documents found at Exhibits 7, 8, 9, 10, and 11 of the *in camera* submission. Production of unredacted versions of the documents in the second category shall be held in abeyance until after the expiration of the objections period in Fed. R. Civ. P. 72(a) and the resolution of objections, if any, by the District Judge.

**27.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **September 15, 2023**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**28.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

29. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

_____
Sherry R. Fallon
United States Magistrate Judge